Hott, J.,
delivered the opinion of the court:
The Government Printing Office contains nine salaried officers and over twenty-three hundred employés. In their legal relations with the Government the employés are contractors. Their wages are a matter of agreement with the Public Printer; *265 but a limit is set upon his authority by a statute, which will be hereinafter considered, he being allowed to contract for less, but not for more, than certain rates of wages therein specified. At this time the wages paid are the highest which the Public Printer is by law allowed to pay, being fifty cents a thousand ems for piecework and forty cents an hour for time work; that is to say, $3.20 for a day of eight hours. The work actually performed, if it be piecework, or the time actually occupied at work if it be timework, forms the basis of compensation, and is the standard by which it is reckoned.
The status of the claimant and the defendants being then , that of contract, by which the one agreed to render service and the other to pay a designated compensation, Congress passed the following acts, 1886, 1888:
“ AN ACT granting leave of absence to employés in the Government Prin ting Office.
“Be it enacted by the Senate and the House of Representatives of the United States of America in Congress assembled, That the employés of the Government Printing Office, whether employed by the piece or otherwise, be allowed a leave .of absence, with pay, not exceeding fifteen days in any one fiscal year, after the service of one year, and under such regulations and at such times as the Public .Printer may designate. Such employés as are engaged on piecework shall receive the same rate of pay ior the said fifteen days’ leave as will be paid to day hands: Provided, That those regularly employed on the Congressional Record shall receive leave, with pay, at the close of each session, pro rata for the time of such employment.
“ Sec. 2. That this act shall take effect on and after the first day of July, eighteen hundred and eighty-six.
“Approved, June 30, 1886.” (24 Stat. L., 91.)
“AN ACT to extend the leave of absence of employés in the Government . Printing Office to thirty days per annum.
“ Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the act entitled ‘An act granting leave of absence to employés in the Government Printing Office,’ approved June thirtieth, eighteen hundred and eighty-six, be so amended as to extend the annual leave of absence therein described to thirty days in each fiscal year: Provided, That it shall be lawful to allow pro rata leave to those serving fractional parts of a year.
“Approved, August 1, 1888.” (25 Stat. L., 352.)”
*266 Of the second statute it is to be noted that it has two purposes, the first of which is plain, viz, to double the period for which a leave of absence may be allowed to an employé by increasing it from fifteen to thirty days. The second purpose is not apparent until we examine the practical working of the preceding statute.
According to it the “ fifteen days’ leave of absence ” could not be granted until “after the service of one year; ” that is to say, a man had to render a year’s service before he could claim the benefit of the statute. The second act removed the restriction, and made it “ lawful to allow pro rata leave to those serving fractional parts of a year.” If a man should work six months, fifteen days’leave might be allowed; if he should work one month, two and a half days, etc.
But there is one restriction in the first act which is not only retained but reiterated in the second. The “ annual leave of absence,” though extended to thirty days, is nevertheless limited to “ thirty days in each fiscal yearP Beading the two acts as one, the meaning is that “ in any one fiscal year ” there may be allowed to an employé ‘ a leave of absence, with pay, not exceeding thirty daysP In other words, these leaves of absence are not cumulative within the intent of either act; thirty days of absence is all that the law authorizes in any one fiscal year. A man can not work two years uninterruptedly and then be allowed sixty days’ leave of absence; he can not work eleven years without leave and then be allowed a year.
In the present case the claimant was a compositor in the Government Printing Office from July 10,1888, to September 25, 1889; and was employed sometimes on timework aud sometimes on piecework. At the termination of the fiscal year, the 30th June, 1889, the leave of absence which the Public Printer might allow to him for the fractional part of the fiscal year then ending was 25§ days. On the 12th of August he was granted a leave of absence from the 14th of August to the 8th of September, being for 23f consecutive (lays. On the 25th of September he ceased to be an employé in the Government Printing Office. The manner in which his contract relations with the Government were then severed does not appear, but both the petition of the claimant and the statement of counsel aver that he was not an employé in the Government Printing Office after that day. Nevertheless he was then *267 granted pay ($19.20) for “ seven days’ leave of absence, tbe same being for tbe fraction of tbe year July 1 to September 25,1889,” though in fact no leave of absence bad been granted and no sueb absence bad occurred.
For the period of 25f days of absence tbe claimant was paid precisely what be would have been paid if he bad continued at work; or, to state it in another way, be received for bis absence from August 14th to September 8th precisely what other men who remained in tbe Printing Office received for their work. He now seeks to recover more. During bis leave of absence there were four Sundays; on those four Sundays the office was closed; tbe men did not work, and consequently were not paid; and tbe closing of tbe office and the nonpayment of the men when not at work were according to the usage of the establishment. The first question therefore which is presented by the case is whether the words of the statute, “ a leave of absence, with pay,” refer to the pay which the recipient would have received during the period of absence if he had not been absent, or jvhether they mean that he should receive pay during his absence for Sundays — i. e., for days which were not working days, and for which the other men not on leave received no pay.
It is urged in the argument of counsel that “ the whole thing of pay for the leave of absence is a gratuity,” and that the practical operation of the law is that a man shall receive additional pay if he does not take a leave of absence. But the court can not regard this as the intent of these acts.
The Revised Statutes (§ 3763) provide that the Congressional (now the Public) Printer may employ proof readers, compositors, etc, “ at such rates of wages as he may deem for the interest of the Government and just to the persons employed. The Act 16th February, 1877 (19 Stat. L., 231) set a restriction upon this discretion — that “ the Public Printer shall pay no greater price for composition than fifty cents per thousand ems and forty cents per hour for timework.”
Congress, morever, have reiterated this restriction since the acts granting leave of absence were passed by appending an exception to it in favor of nightwork (Act 3d March, 1891, 26 Stat. L., 989), and by refusing to increase the compensation for daywork (Congressional Record, January 16, 1891, p. 1446.)
*268 Taken together, the Acts 1877 and 1891 indicate that from 1877 to 1891 Congress intended that the maximum of pay for daywork should be fifty cents a thousand ems and forty cents an hour.
Bead in connection with the Eight Hour Law (Rev. Stat., § 3738), which extends to the Goverment Printing Office, the three statutes declare that a day’s work shall not exceed eight hours, and a day’s wages three dollars and twenty cents. It can not be supposed that Congress intended to limit wages directly by one statute and increase them in a roundabout way by another. It would be disrespectful to Congress for a court to ascribe such childlike vacillation to the national legislature. The law of industry is that the more a man works the more he shall receive; but the construction suggested would reverse the natural law pro hao vice, and declare that the more he is idle the more he should be paid. If wages -shall be raised by act of Congress, the judiciary must believe that they will be raised directly and not evasively. Statutes which in plain terms declare that eight hours shall constitute the limit of a day’s work and that $3.20 shall constitute the maximum of a day’s pay can not be forced by construction to mean that the Public Printer by the simple expedient of withholding leaves of absence can raise wages to‘ $6.40 a day for thirty days in the year, or for twelve months’ work can give a man thirteen months’ pay. The court, therefore, must look .for some other purpose than giving gratuities or raising wages as the purpose of Congress in the enactment of these laws.
The eight-hour system of manual labor came to America and Europe from Australia. It began there as long ago as 1856; its successful founder, James Galloway, died in 1860, and on his monument in Ballarat is inscribed the principle, “Eight hours work, Eight hours recreation, Eight hours rest.” The idea which has been advocated thoughout the world, is that the individual will be the better for the restricted hours of labor, and that the amount of work to be done in the world will be more widely distributed and better able to go around. During the current half century there has been a steadily growing belief against monopolies, whether monopolies of money or monopolies of work; and this belief has nowhere received more openly expressed advocacy and less contradiction than in the halls of Congress.
*269 In a primitive condition of society, and indeed in many other countries at the present time, the laborer is required to work through the natural day twelve hours and for seven days of the week. Measured by hours, his labor per week amounts to eighty-four hours. The religious convictions of the Anglo-Saxon race early struck out oue-seventh part of this time and reduced the hours of labor per week to seventy-two, and thereby distributed the work which might have been done by six men among seven. The reduction, or tendency toward reduction, went on until in 1868 the Eight Hour Law (Rev. Stat., § 3738) adopted it as the policy of the Government, and thereby reduced the working week to forty-eight hours. The next and final change applicable to the Government Printing Office was made by the acts under consideration, which contemplated a further reduction of one-twelfth of the working time and brought the hours of labor down to forty-four.
There are too many men in American cities, such as car conductors and drivers on city railroads, who work twelve hours in the day and seven days in the week. If they should take their own time as the unit of reckoning, and. compare their own lives with the others, they would say that the men in this Government establishment work less than six months and twenty-six days in a year. Conversely, if the hours and days of labor in the Government Printing Office were the same as those of these car drivers and conductors, the force employed, instead of being twenty-three hundred, would be but twelve hundred. In other words, the various restrictions upon the hours and days of labor, by religious observance, by usage, and by statute, have secured in this one establishment steady and remunerative and honorable employment for upwards of eleven hundred persons.
In the opinion of the court the intent of these two statutes under consideration, the Acts 1886 and 1888, is on the one hand to secure to the individual employé a vacation for refreshment and recuperation, and on the other to increase the working force of the Government Printing Office by nearly two hundred hands. When all of the statutes relating to the subject are reviewed and brought together as a whole it is plain that the policy of Congress has been to avoid favoritism and monopoly in the dispensation of Government employment. The result of that policy properly carried into effect, may be formulated *270 thus: The Government intends to pay the highest market rate of wages to the largest possible number of persons. The result which would be reached by holding that the statutes intended a gratuity of pay in addition to wages proper would practically be the converse of the preceding, viz, that the" Government should pay the highest possible wages to the fewest possible persons.
So regarding the purpose of this legislation, we pass now to its practical application.
The Acts 1886 and 1888 provide that the Public Printer, in his discretion, may grant a leave of absence which shall not exceed thirty days in a fiscal year “ with pay.” Whether this {‘ pay ” shall be the pay which the employé would have received if he had not received a leave of absence, or whether it shall be pay for every day of the leave, is the question to be answered. In giving an interpretation to the enactments the court can not confine its inquiries to a single isolated case, but must ascertain and define the intent of Congress by pushing the inquiry to the full extent of the scope and operation of the statutes.
There were 312 working days in the fiscal year ending June 30,1889. For those days, or for that year, a man doing time-work in the Government Printing Office was entitled to receive under the statutes and the contract $998.10, whether he was present or whether he was absent, provided always that if absent he was absent with leave and that the days of absence did not exceed thirty. The subject of the absence for the fiscal year was a matter between the Public Printer and himself, a matter exclusively within the official discretion of the Public Printer, and consequently beyond the jurisdiction of courts and accounting officers. Whether these leaves of absence ran from Monday morning to Saturday night, whether they were for an entire week or a calendar month, no more concern the courts and accounting officers than whether they were granted in warm weather or in cold.
The law imposes both the duty and the responsibility of granting or refusing leaves of absence exclusively upon the Public Printer. It is his duty to administer thestatute according to its spirit and intent and with a proper regard to the just interests of both parties. He is authorized to administer it by *271 “regulations,” and may prescribe general rules which would practically exclude individual applications. He may make the leave of absence dependent upon good conduct, and in the exigency of pressing work, when other employes could not be procured, he would be justified in refusing it altogether. The em-ployé has no legal right to a leave of absence until it be granted, and can no more dictate when he will take his vacation than a student in college or a boy in school. The Public Printer must determine the times and seasons and periods of absences as the needs or exigencies of his department may permit. But at this point his discretion stops and the supervision of the accounting officers begins. He has jurisdiction of attendance and work, to grant leaves of absence or to refuse them, but not to increase wages or vary or augment the legal liabilities of the Government. Whether he grant leaves of absence by the month or the week, or for a single day, or for a designated number of days, or not at all, will not affect the wages of the employés ; wages are not within the scope of his discretion and will continue precisely the same as if no leave of absence had been granted or refused. This subject o.f the leave-of-absence laws is not wages, but work; they authorize the Public Printer to lessen work; they do not authorize him to augment pay.
If the statutory rights of a man on timework in the Government Printing Office should be set forth in the form of an account, he would be credited with $998.40 for a year’s work and debited with the number of days when he was absent. The Acts 1886 and 1888 now interpose, and say that he shall not be debited with all of the days when he was absent, provided, first, that he was absent with leave, and, second, that the leave did not exceed a certain prescribed time. These statutes do not affect the credit side of the account; they do not say that a man shall be credited with more days than he was formerly credited with, but that he shall not be charged with so many absences. The present suit is an attempt to disturb the wrong side of the account. It is not brought to compel the Public Printer to grant full leaves of absence whether he will or no, and to grant them for week days instead of for specific periods which include Sundays; but to compel the accounting officers to credit the account with four or five more working days than, there are in a year, so that one man who works all the year with *272 out a single absence, will be credited, as before, with 312 days, while another, who has received a full leave of absence, will be credited with 316 — so that the employé who works the year round without missing a day will be paid $998.40, while he who has enjoyed a thirty days’ leave will receive $1,011.20. The practical result of such a construction would be that if the Public Printer, under some unusual pressure of work, should refuse leaves of absence and hold the employés to unbroken attendance from one end of a year to another, they would receive less pay than if they had worked for eleven months.
It is impossible that Congress intended that this beneficent legislation should be so administered as to reach such a result. In the opinion of the court the leave-of-absence laws do not affect wages. The legislative purpose is that wages shall continue, neither diminished nor augmented, just as if no leave-of-absence law had been enacted. Taking all of the statutes and the common-law usage together as constituting a legal system controlling the Government Printing Office, it comes to this: That it is the intent of the lawmaking power that an employé shall not work more than eight hours in one day, nor more than six days in one week, nor more than eleven months in one year ; and that he shall not be paid more than the prescribed rate of wages.
In the case of men employed on piecework, such as compositors, the same rule will govern their right to compensation when absent. The statute then commutes their earnings at $3.20 a day, and their employment becomes, during the period of leave, as if it were timework. Should the Public Printer grant no leave of absence, they will continue to get what they earn; should he grant a leave of absence for a month, a week, or a day, or a number of days, they will get in lieu of what they would have earned precisely what a timeworker will be getting for bis work during that identical period of absence.
A second question of construction is presented by the fact that on the 25th September, 1889, when the claimant left the public service, he was “grantedpay ($19.20) for seven days,” in the stead of a leave of absence based on his service for the fraction of the current fiscal year, though no leave of absence had in fact been granted.
The court is not disposed to deny that the same result might have been legally attained by granting the claimant a leave of *273 absence for whatever time he was entitled to and postponing the discharge until the expiration of the leave. It is indeed possible that this was the course pursued, and that the averment in the petition and in the statement of counsel that the claimant was not an employé in the Government Printing Office after the 25th September was inadvertently made; but no leave of absence appears in the record, and as the case now stands it must be inferred that this payment was made after he had been paid in full for his services and when he had ceased to be an employé of the Government. For the “ fractional part” of the fiscal year from the 1st of July to the 25th of September the claimant was entitled to a leave of absence, if the Public Printer saw fit to grant one. " But he was not bound to do so. He might refuse a leave of absence for cause, and discharge a man at any moment. In the case of the claimant no fault is alleged, yet cases may arise where an employé is discharged for crime,' dishonesty, drunkenness, insubordination, or other misconduct. Such a person is not one of those whom Congress intended to aid; he has no legal right to redress, and is entitled to no favor. But whatever the cause of discharge might have been, the power of the Public Printer to grant a leave of absence ended on the instant that the claimant ceased to be one of the persons named in the statute. His power to grant leaves of absence is limited to “the employés of the Government Printing Office.” When the relation of employer and employé ceases the power ceases. He is not authorized to grant constructive leaves of absence to persons who have ceased to be employés, nor to pay to employés a money equivalent for leaves of absence. The payment can derive no color of law from the Acts 1886,1888, and was expressly forbidden by the Revised Statutes § 3648, which declares that “ in all cases of contracts for the performance of any service” “ payment shall not exceed the value of the service rendered.” The claimant had been paid in full the contract price for all the service he had rendered; and the payment for work which he never performed was a payment in excess, unauthorized and forbidden by law.
According to the record, the claimant was "granted pay ($19.20) for seven days’ leave of absence.” He maintains that he should have been paid for seven ($22.40), and he is now seeking to recover the pay of one day, his contention, as the *274 court understands it, being that he was entitled to a leave of absence for seven days, which was recognized by the Public Printer and in an indirect way granted. But when this hypothetical leave of absence was granted the claimant had received 25§ days’ leave of absence during the then current fiscal year. The Act 1888 expressly limits leave of absence “ with pay ” to “ thirty days in each fiscal year,” and, as hereinbefore has been shown, these leaves of absence are not cumulative; that is to say, they can not be omitted in one year and doubled in another. On the 25th of September, when the payment above referred to was made, the Public Printer had already granted and the claimant had already taken 2o§ days’ leave of absence with pay, and all that remained to be granted during the fiscal year were 4§ days. The payment for seven days therefore would have been doubly illegal. Considered as a payment it would have been illegal because it would have been payment for a service which had not been rendered. Considered as a leave of absence with pay, it would likewise have been illegal, because it would have been in excess of the thirty days to which the authority of the Public Printer was limited by law.
The judgment of the court is that the petition be dismissed.