Nott, J.,
delivered the opinion of the court:
The law of master and servant has a certain elasticity not to be found in the law which regulates other contracts. The servant can not charge his employer if he works overhours within the sphere of his proper employment, and the master can not charge the servant with lost time where he falls short in his hours of labor. The remedy of the one is to discharge and of the other to stop work. So long as they allow the relation of.master and servant to continue, so long trivial deviation from the right line of the contract will not receive the aid or countenance of the law. This element of elasticity was doubt *215 less introduced into the law of master and servant for the peace and harmony of society. It is a wise rule which enables both parties in a' continuing relationship to know at any time just where they stand. If it were not so, the one might spring upon the other an account for short hours at the end of the year, and the other might present a bill for numberless unknown items of overtime, and endless petty conflicts would take the place of peace and harmony.
The law of master and servant goes still further than this. It requires the servant (and this notwithstanding an express agreement or a statutory regulation) to render service overhours in cases of emergency without additional compensation, and it even makes his refusal justifiable cause for discharge. That is to say, where a man agrees to work only ten hours a day and the master, in a proper case of emergency, requires him to work twelve, and he refuses, the master can treat the refusal as a violation of the contract and put an end to it.
But these cases of allowed deviation from the contract are nevertheless guarded by careful limitations. The additional service of the servant must be within the sphere of his ordinary employment. If required to do something entirely different from that which he was hired to do, he has a right of action. Thus, it is said, a clerk can not be required to carry mortar ; a ladies’ maid can not be required to milk cows; a saddler can not be required to cook; a farm laborer can not be required to serve as a household servant. So, if the servant renders additional service in the line of his own proper employment, but against his objection, and at the special request of the master, he can recover for it. So, too, his additional service, though not a good cause of action per se, will support a promise to pay, and he can recover on it.
These cases illustrate the care of the common law to guard the peace and quiet of the domestic relations, and to exclude the vexation of litigation from the ordinary daily affairs of life. But these variations from the letter of the contract all relate to trivial things. The law of master and servant does not compel a man who has agreed to render one kind of service to render another, nor one who has agreed to do one thing to do two. The departures from the contract which are countenanced must be trivial, ordinary, and reasonable, or rendered necessary by a minature vis major termed “emergency.”
*216 If we regard tbe case before us as one of master and servant and tbe regulations of tbe Treasury Department as an express contract between tbe parties, and tbe day 'specified in tbis express contract as a single nigbt watcb running from sunset to midnight or from midnight to sunrise, it is manifest that tbe deviation of requiring tbe servant to serve from sunset to sunrise, of requiring one man to do tbe work of two men within tbe contemplation of tbe contract, is too gross a deviation to come within tbe exceptions allowed by tbe common law. Tbe regulations provide that two watches shall share tbe duty of tbe night, and that tbe second shall be on duty from midnight to sunrise and until relieved. Tbe relief often came late. But in tbis tbe regulations follow tbe common law, and for such additional service a nigbt inspector certainly can not recover. But that is a very different thing from requiring him to serve just twice as long as it was expressly agreed be should serve. •
If we regard tbe regulations as having tbe force of law and being in effect a statute regulating tbe particular employment, tbe case in tbe books nearest to tbis one is probably that of Bachelder v. Bickford (62 Maine R., 526), which we quote in extenso:
“ WALTON, J.:
“ When a contract to work in a gristmill at eight shillings per day, to be paid weekly, is silent as to tbe length of time that shall constitute a day’s work, tbe rule established by tbe statutes of tbis State, that ‘in all contracts for labor ten hours of actual labor shall be a legal day’s work, unless tbe contract stipulates for a longer time,’ is applicable (R. S., c. 82, sec. 36). And if tbe laborer works nights, after bis legal day’s work is done, at tbe request of bis employer, and for bis benefit, tbe law implies a promise on bis part to pay for such labor. Acceptance of pay for the day labor will be no bar to a recovery for tbe nigbt labor. It is true that tbe above rule is not applicable to ‘ monthly labor,’ nor to ‘ agricultural employments.’ But in our judgment work in a gristmill, at eight shillings per day, to be paid weekly, is not monthly labor nor agricultural employment.
“ Such, in effect, was tbe ruling in tbis casé. We think tbe ruling was correct.
It seems to tbe court that regulations of tbe Treasury issued under authority of law for tbe regulation of tbe service of nigbt inspectors in all tbe ports of entry in tbe United States and *217 actually in force aud operation in all of tbe principal ports, except tbe port of Baltimore, have tbe force of law and take tbe place of tbe statute mentioned in tbe above opinion; and it also seems to the court that requiring an inspector of tbe first watch to render service through the second watch is analogous to the day and night service in the Maine case.
While we have referred to the law of master and-servant as furnishing analogies by which to determine in what cases additional compensation can and can not be recovered for additional service, it must be remembered that this is the case of a public official serving for compensation attached to an office by law. Tbe compensation of a public officer is not necessarily regulated or limited by the law of master and. servant. His salary or pay is generally fixed and certain. It can not be diminished by official authority, as in Sleigh’s Case (9 C. Cls. R., 369), where payment was withheld on account of sickness, or refused him because Congress had failed to appropriate the foil amount, as in Graham’s Case (1 Id., 380). Where a public compensation is a salary fixed by statute it ordinarily covers all the official service of the term of office; but in the present case the law designates no term of office and provides no salary. A daily pay implies a daily service; and when the regulations of a Department, having the force of law, prescribe what that daily service shall be, it becomes as complete a thing with reference to the daily pay as a year’s service is with reference to an annual salary. The night service of inspectors of customs is a peculiar thing and a proper subject for departmental regulation. When the authorities of the port of Baltimore required the night inspectors to go on duty sixty night watches in a month, while the regulations said they should be on duty only thirty night watches in a month, it is manifest that the inspectors should be paid for sixty of these units of service, and that when the Government paid for only thirty it was payingfor one man’s service where the regulations in effect provided that it should pay for two. If the Government had employed two inspectors to do the work of two, and had given to the inspectors on duty through two night watches, the alternate nights of rest assured to them by the regulations, the result in money would have been the same as that now reached by the decision of this case.
*218 The counsel for tbe defendants has likened tbis case to Harrison’s (26 C. Cls. R., 259), and has argued that the credit to which the claimant was entitled was on the other side of the account; that he was not entitled to more-money, but to more rest, and that when he did not get the rest, which was prom ised him on each alternate night of all-night service, his only remedy was to resign. That might be true if the claimant had been employed by the month or year. But it is plain that during his period of employment, from the 1st of April, 1882, to the 2oth of August, 1886, he rendered service through 2,196 night watches, while the regulations at the same time required him to render it only through 1,098. The additional 1,098 were consequently additional service, for which he was not paid, and for which, in the opinion of the court, he is entitled to recover.
There are two other points in the case which should be noted.
The time when the claimant’s service as night inspector began was April 1,1882, but this action was not brought until August 24,1888. Consequently so much of the claim as accrued prior to August 24,1882, is barred by the statute of limitations. The defendants have hied no plea setting up the statute, nor moved to strike out this much of the demand; nor was the attention of the court called to this defense pro tcmto on the trial. But under the decision of the Supreme Court in Finn v. The United States (123 U. S. R., 227) this is a defense which the court is bound to notice. And in the absence of proof or explanation to the contrary, the court must assume that all of the nights between- the 1st of April and 24th of August, 1882, were nights of double duty, and the court, therefore, must exclude from the claimant’s recovery pay for 144 days.
The second point relates to a question of evidence.
The claimant has testified that he was on all-night duty, except when absent from sickness or other causes, for 1,352 nights. This is in a measure corroborated by the records of the Department, which show that he was recognized as on duty 1,353 days. The claimant does not specify the particular nights on which he did double duty; he kept no record, and obtained his figures by going to the record kept by the clerk of night inspectors and getting from it the number of nights for which he was credited with service. But it appears by the testimony of the surveyor of the port that when the number of vessels coming into port fell off, and the whole force was *219 not required for duty, so many of tbe inspectors as were not needed would be excused; and it appears by tbe report of tbe deputy collector of tbe port to tbe Secretary of the Treasury (which we understand to be a statement for services paid for) that the.number of nights when tbe claimant was present and doing duty, during bis entire period of service, was 1,608, and tbe number be was absent 255. On these 255 nights, therefore? tbe presumption is, tbe claimant received what be was entitled to, and all that be was entitled'to, viz, pay with absence from duty; and tbe reason why be was entitled to pay with absence from duty was because be bad rendered double duty on 255 nights of tbe 1,608 nights in tbe other column. For these 255 nights of'double duty tbe claimant, therefore, is entitled to nothing; be received full compensation for them when be received pay for 255 other nights during which be rendered no service. Accordingly, 255 must be subtracted from tbe 1,353 of double duty, leaving 1,098; and from this number, 1,098, there must be subtracted 144, barred by tbe statute of limitations, leaving 954 for which be is entitled to recover.
Tbe judgment of tbe court is that tbe claimant recover 12,862.