Howry, J.,
delivered the opinion of'the court:
Ninety-four persons, known during their respective terms of service as surveyor’s watchmen at the port of Philadelphia, bring these actions, in sums aggregating $67,016.92, to recover the difference between the amounts they received at $810 per annum as watchmen and the amounts they now claim they were entitled to receive as night inspectors at $3 a day for the time they are shown to have continuously served.
During the years 1881 and 1885 there was at the port a force of men on duty known as night inspectors. They were paid $3 a day under a statute which authorized that amount of pay, and were appointed by the Secretary of the Treasury, with duties prescribed by regulations. In December, 1885, means were taken to remove this force by abolishing their places as vacancies occurred and substituting therefor a new force known as surveyor’s watchmen, at an annual compensation of $810 to each person. From December 11,1885, until August 5, 1886 (which period covered the time taken to change the entire force), there was at the poi't a force of surveyor’s watchmen and night inspectors, all performing the same duties and on the same pay rolls, the surveyor’s watchmen receiving pay at the rate of $810 per annum and the night inspectors $3 per day. The forms used by the Treasury Department for night inspectors’ reports were not altered from those used in the year 1881 except that at the port of Philadelphia in 1889,1890, and 1891 the words “surveyor’s watchmen” were stamped upon them. The surveyor’s watchmen appointed from time to time include all the petitioners, who, during their periods *320 of sendee, performed no other or different duties from those performed by night inspectors. This condition of affairs continued until appointments of night inspectors by that name were again made in 1895.
The character of the duty performed bjr the persons called night inspectors and surveyor’s watchmen was to keep watch over vessels to prevent the landing, between sunset and sunrise, of merchandise from such vessels unless by proper authorhy and under the supervision of a day inspector, and to protect bonded stores from robbeiy or the unlawful removal of merchandise from any wharf or other place on which same may have been deposited.
Though the petitions are separate, the facts are the same in all the cases except one, and, that one offering no substantial difference, the actions have been tried together, though not consolidated.
In the exceptional case of William Burnside it appears that he was a night inspector at the time of the order which put the other petitioners on the same kind of duty under a different name; and without being removed he continued to perform the same duty as a surveyor’s watchman that he had previously performed as night inspector, but at the reduced compensation.
The questions presented relate to the right of the Secretary of the Treasury, under the civil-service act, to remove a force called night inspectors and to substitute another force designated as surveyor’s watchmen in their stead; his authority under the revenue laws, to displace officials known as night inspectors, appointing watchmen to take their place, but discharging the same duties, and withholding the per diem compensation theretofore paid to night inspectors, and placing the compensation of the persons so substituted upon an annual basis carrying smaller pay; Avhether plaintiffs can recover the salary of night inspector, if any such office existed, for want of appointment thereto; and, finally, whether they are estopped from claiming the difference between the amounts they received as annual salary and the amounts they may have received had they been commissioned as night inspectors upon the per diem basis.
Respecting the removal of the original force, the petitioners *321 saj* tbe change in designation from night inspectors to that of surveyor’s watchmen was in violation of law, because its object was the taking of the office from the classified service, which was continued and carried out by their appointments to the unclassified service.
Whatever may have been the underlying causes of the recommendation of the collector of the port for the change, the record discloses that it was determined to abolish the places of officials designated night inspectors and to substitute the new class as vacancies occurred, upon the ground that the change would reduce the expenditures of the Department many thousands of dollars, as shown by the report of a special agent. .The'new places were filled from oligibles on the civil-service list. As the men were selected they went into the service upon examinations. There is no proof contradicting the official record that the Secretary made the order to improve the public service.
Without something more than surmise and suspicion wo can not presume that the change was what the petitioners now think it was. The presumption is always in favor of a correct performance of his duty by an officer. (Throop on Public Offices, section 558.) This presumption must prevail unless overthrown by evidence, which has not been done.
If the order which accomplished the remoA'al of the night inspectors was illegal, we are unable to see how an inquiry into the removals can now avail petitioners. If they were beneficiaries of the order which put them in the service, but did not give them enough to make the fraud of the Secretary, as they call it, a complete success, an earlier complaint of the illegality’ of the order may have been tenable on behalf of those who were removed, but not now for those who claim for the first time that they were illegally appointed.
But it is argued that as the night inspectors were removed petitioners became entitled to the same pay as the persons who were removed; that their appointments were really to an office known as that of night inspector, which carried a fixed daily pay, and that the Secretary was without authority to take from them per diem pay and put them upon an annual compensation carrying less pay, and that in any event they *322 were entitled to bo paid the samo as regular inspectors of customs, independent of the question of their title to the office of night inspector.
On the other hand, the defendants insist that Congress have only recognized the office of inspector of customs created bjr the Secretaiy of the Treasury, and that there is no provision that thojr must bo emplo3md or that the duties of the office shall not be changed or that the positions shall not be abolished or discontinued and other positions created. In any event, they say the office of inspector of customs and that of night inspector are two veiy different things; that an inspector of customs — quoting the regulations—
“has to do not only with the collection of duties on imports, but also with violations of the internal-revenue and navigation laws; that they not only examine the cargoes of vessels, but the vessels themselves, and are required to wear a uniform and a badge of office, with power of arrest; to make examinations of American vessels; to examine and secure with seal the hatches and openings of all vessels from foreign ports; to discharge vessels when so ordered by surveyors, and to report daily ail vessels arriving and to supervise the shipment of goods in bond; while a night inspector is not an inspector of customs at all, but a mere watchman, whose duties are to preArent smuggling by keeping watch over vessels when in their custody, to prevent landing at night any merchandise from such vessels unless by proper authority and under the supervision of a day inspector, and to protect the bonded stores from robbeiy or unlawful removal.”
The effect of the statutes upon the power and authority of the Secretary to employ the petitioners as he did, and to discriminate against them in the matter of pay, circumscribes the inquiry within very narrow limits.
Section 2á8 of the Revised Statutes provides that—
“The Secretary of the Treasury shall, from time to time, digest and prepare plans for the improvement and management of the revenue and for the support of the public credit; shall superintend the collection of the revenue; * * * shall grant, under the limitations herein established, or to be hereafter provided, all warrants for money to be issued from the Treasury in pursuance of appropriations by law; * * * and generally shall perform all such services relative to the finances as he shall be directed to perform.”
*323 Section 249 provides that—
“The Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports and tonnage as he shall judge best.”
Section 2627 recognizes, as a part of the machinery of the custom-house, inspectors, weighers, searchers, gaugers, and laborers. All inspectors are authorized to seize goods for violation of law, and required, under section 15 of the act of June 22, 1874, to send to the public store all goods taken by them for violation of law.
Section 2733 provides that—
“Each inspector shall receive, for every day he shall be actually employed in aid of the customs, S3; and for every other person that the collector may find it necessary and expedient to employ, as occasional inspector, or in any other way in aid of the revenue, a like sum, while actually so employed, not exceeding §3 for every day so employed. ”
Section 2733 -was amended by an act approved June 20, 1878 (20 Stat. L., 217), so that such inspectors employed for service at night should be paid S§2.50 for each night.
Under an act approved June 30, 1880 (1 Supp. Rev. Stat., 292), entitled “An act to regulate the compensation of night inspectors of customs,” we have the first mention made in any statute of night inspectors. This act authorized the Secretary of the Treasury to increase the compensation of “inspectors of customs employed under existing law for service at night” to a sum not exceeding $3 for each night’s service; but the character of this service is not defined in the body of the act so as to indicate what constitutes a night inspector. Where the mind labors to discover the design of the legislature it seizes anything from which aid can be derived, and in such case the title claims a degree of notice. (United States v. Fisher, 2 Cranch, 387.)
The title of this act, however, throws but little light upon the subject. While it does recognize “inspectors of customs under existing law for service at night,” there is nothing in the title any more than in the context of the act to indicate whether the officials described are those who must actually inspect as day inspectors inspect — alike in rank, authority, duty, and pay — or whether they are, in custom-house nomen *324 clature originating in regulations, merely guards performing similar duties to those of watchmen.
But assuming that there was such an office as night inspector, with duties different from those of inspecting goods in the daytime, and that petitioners performed the duties, respectively, of that office under the designation of surveyor’s watchmen, they were all employed subsequent to the act of 1880, supra, and an act approved March 3,1881 (1 Supp. Rev. Stat., 321), which provides, in section 2, “That hereafter the Secretary of the Treasury may appoint inspectors of customs at a compensation less than S3 per day when, in his judgment, the public service will permit.”
Petitioners admit that the Secretary might at discretion have given them as inspectors per diem pay at less than $3, but claim the rule of payment to be by the day and not by the year; that when the contract is for employment by the year the Government, in such cases, may be compelled to make payments not contemplated, and that the change might have the effect of depriving inspectors of rights to which per diem pay might entitle them.
If petitioners were inspectors the terms of their employment were irregular under the acts authorizing compensation by the day. But we are unable to see how the Government can be compelled to make payment for unearned service or be injuriously affected by an arrangement which contemplates service with pay for a longer period than a day, when it is considered that an office can be abolished by proper authority at any time. When the duties of employees of the Govern ment come to an end proper means are seldom, if ever, wanting in discontinuing unnecessary employment without liability for unearned pay. Danger to the interests of the Government as the result of irregular methods of employment can not arise where the equivalent of per diem compensation is given on a yearly basis.
The only reason assigned that a change from per diem pay to annual compensation would injuriously affect employees is that the incumbents may be deprived of holidays. Inasmuch as those employed by the year are entitled to holidays while employees by the day are not always so entitled, the yearly *325 employees have the advantage of continuing service for a longer period, which leaves them no room to complain.
In Harrison v. United States (26 C. Cls. R., 259) the reasons for transposing 13.20 per day into $998.40 per year are satisfactory. The converse of this proposition seems to be equally true.
It' appears that the rate of pay for inspectors had been fixed by the Secretary of the Treasury at $3 a dajr before petitioners entered the service as watchmen. This discrimination against them raises an issue under another statute.
Section 2738 provides:
“That all aids to the revenue, or others performing the duties of inspectors of customs in any collection distl’ict, shall be paid the same per diem compensation as inspectors of customs.”
This section must be considered in all its parts. The opening sentence can not mean that all “aids” to the revenue, not being persons performing the duties of inspectors, must be paid the same as inspectors, because a construction which ■would literal^ include aids of all kinds would cover officials who are paid more by law and laborers who are paid less bjr regulations. The statute rejates to all such aids to the revenue as others performing for the time being the duties of inspectors of customs. Petitioners were persons standing guard over goods at night to prevent removal, without authority to inspect the contents of the packages which they Avere engaged to watch. Such persons are night Avatchmen to preArent smuggling. (Art. 410, Customs Reg., 1883.) Their duties are to keep goods in place, but not to examine invoices or inspect stores, nor yet to make appraisements or determine anything respecting dutiable articles. Their obligations as guards involve responsibility and the exercise of vigilance, but not the same degree of intelligence or education as those Avho are required to examine packages and invoices, make appraisements, and collect reA'enue.
Again, if this section is a limitation upon the power to pay petitioners as they Avere paid (eAren though the regulations may not accurate!}" describe their status), then it displaces whateArer general authority the Secretary of the Treasury had *326 under section 249, supra, to direct the superintendence of the collection of duties on imports as he shall judge best, and also the general power conferred by the act of 1881, supra, to pay inspectors at discretion, “ when the public service permits.”
Section 2138 must be taken within its limits and construed in connection with the discretionary authority conferred by other and subsequent statutes. These statutes are in pari materia and must be reconciled if possible. If they can not be made to harmonize, then the general provision conferring administrative discretion should prevail. Thus where there is a general provision and there are also certain specific provisions and limitations found in earlier statutes, the last statute becomes the exclusive law of the case. (Eckloff v. District of Columbia, 135 U. S., 240.)
If petitioners held title to statutory positions as thejr now claim, the Secretary of the Treasury had the right to regulate their compensation below $3 a day under the general authority given by law to him for that purpose. The act of 1881 would bo a nullity if it did not embrace the right of the Secretary to pay different per diems to inspectors below §3 a day at discretion. This would include the right to pay watchmen at discretion likewise within an equivalent of that per diem rate of pay.
Where the law has authorized the exercise of discretion or judgment the courts can not guide and control the judgment and discretion of the administrative departments of the Government in matters committed to their care. (Decatur v. Paulding, 14 Pet., 497, 515; United States ex rel. Dunlap v. Black, 128 U. S., 40; United States v. Schurz, 102 U. S., 378, 396; Boynton v. Blaine, 139 U. S., 306; Redfield v. Windom, 137 U. S., 636; Keim v. United States, 177 U. S., 293.)
Petitions dismissed.