EFRAÍN RIVERA MALDONADO, Plaintiff-Appellee and Appellant, v. PUERTO RICO HOUSING AUTHORITY ET AL., Defendants-Appellants and Appellees.

No. 12528.    Decided February 26, 1963.

<hr/>

*Efraín Rivera Maldonado* pro se.  *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Edgar S. Belaval,* and *Alfonso L. García Martínez, Assistant Secretaries of Justice,* for defendants-appellants and appellees.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Section 28 of the Personnel Act, Act No. 345 of May 12, 1947 (3 L.P.R.A. § 668), provides that:

"All employees in the competitive and non-competitive services, except emergency employees, shall be entitled to leave of absence and vacation at the rate of two and one-half days for each month of service, and to sick leave at the rate of one and one-half days for each month of service, excluding in both cases Sundays and legal holidays.  The appointing authority shall, in agreement with the employees, determine the date on which the latter shall enjoy their annual leave during the course of any one year, in the manner most compatible with the needs of the service; Provided, That each employee shall be entitled to said leave during a period of not less than fifteen (15) consecutive days.

"The rules shall provide for the hours of work, holidays, attendance regulations and leaves of absence and sick leaves, as well as special leaves for a just cause, with or without pay, as the case may be."

The Personnel Regulation approved on September 9, 1952 under the authority of the above-quoted section—3 R.&R.P.R. § 647–114—provides in its subdivisions (b) and (c) as follows:

"(b)  Employees who fail to take the vacation leave granted by the Act, may accumulate same up to a maximum of sixty (60) working days at the end of any one year.

"(c)  The appointing authorities may grant a vacation leave in excess of thirty (30) days in any one year to employees who have accumulated leave as provided in (b) above.  However, the vacation leave may not exceed sixty (60) working days in any one calendar year."

Plaintiff herein rendered services for more than five years to defendant, an agency of the Commonwealth.  On July 15,

1955 he began to enjoy vacation leave he had accumulated at the end of which he would cease in the functions of his office. On July 15 he had accumulated 63½ days, at the rate of 2½ days for each month of service. He was only granted 55 days because during the year 1955 he had enjoyed a 5-day leave. Plaintiff alleges that he has a right to enjoy the 8½ days in excess of the leave granted. He also maintains, that he should be granted leave corresponding to the vacation he has a right to enjoy before his resignation takes effect.

The trial court sustained petitioner's first contention but not the second. Plaintiff and defendant appealed to this Court.

Plaintiff's contention, with which the trial judge was in agreement, is to the effect that § 28 of the Personnel Act, copied above, does not limit the number of days that an employee may accumulate in order to enjoy vacation leave and that the reglamentary regulation which limits them to 60 days is against the clear provision of the law.

■ It is a cardinal principle of hermeneutics that words, the language of a law, must be given the interpretation which validates the intent of the Legislature upon approving the measure. Having stated this principle, we shall turn to the question raised.

■ The purpose of the provision under consideration— § 28 of the Personnel Act—is to grant the employee a period of rest which periodically helps him to recover the strength drained by daily toil, as well as to provide him with the opportunity to share more intensely with his family a reasonable period of annual vacation. It is his only opportunity to enjoy the company of his family during the entire day for a reasonable period. It is one more milestone in the struggle for the emancipation of the wage earners. It is another step in the redemption which began in Australia around the middle of the last century when James Galloway succeeded in

introducing the 8-hour working day. See *Communications Authority* v. *Superior Court, ante,* p. 1.

In the opinion delivered in the case of *Butler* v. *United States,* 101 Ct. Cl. 641 (1944), the purpose of this legislation is stated as follows:

"As this court held more than 50 years ago, annual leave is not a congressional device to increase an employee's pay, but is granted in the nature of a refresher, to afford surcease from an employee's labors for the common weal and to enable him to come back with fresh zeal to carry on in his country's service. As Judge Nott expressed it in *Harrison* v. *United States,* 26 Ct. Cls. 259, 269, annual leave was intended 'to secure to the individual employé a vacation for refreshment and recuperation.' It was never designed as a bonus upon separation from the service..."

See *Harrison* v. *United States,* 26 Ct. Cl. 259 (1891) ; *Nicholson* v. *Amar,* 45 P.2d 697 (Cal. 1935) ; RODÓ, *El Mirador de Próspero, El Trabajo Obrero en el Uruguay, Obras Completas,* edited by Rodríguez Monegal, p. 637, 643 (Madrid 1957).

That, we repeat, is precisely the purpose of this legislation: to provide an annual period of rest to the employee. It is not the legislative intention to permit the employee to work year after year without rest, so that at the end of a long period of service he may have the right to enjoy a long vacation. If this were allowed the purpose of the legislator in approving the law would be destroyed: periodical rest to the employee with the opportunity to share a reasonable period of vacation with his family during entire days. If vacations were allowed to accumulate indefinitely, the employee, upon ceasing in his office, could enjoy all the accumulated vacation with pay, and nothing would prevent him from taking up another employment with a private employer during that period, never enjoying the rest which the Legislative Assembly believes should be enjoyed as a matter of public interest, since in the policy established by the legislator for the enjoyment of vacation is involved not only the welfare of the employee

and his family, but also that of the community in general. As stated by RODÓ in the afore-mentioned essay: "It would be fallacious to maintain that in the worker who sacrifices his life or his health for the excess of work, there is nothing but an individual interest, to which the State must remain indifferent."

■ Bearing in mind the purpose underlying the legislation considered in this case, we shall turn to examine the provision in dispute. After establishing the law that the employees "shall be entitled to leave of absence and vacation at the rate of two and one-half days for each month of service" that is, 30 days per year, it is provided that "The appointing authority shall, in agreement with the employees, determine the date on which *the latter shall enjoy their annual leave during the course of any one year.*" (Italics ours.) Thus, we see that the law expressly provides that the appointing authority shall come to an agreement with the employees in order to fix their annual leave in the course of every year. Taking into account the purpose of the law, it is significant that the legislator makes reference to the enjoyment of annual vacation during the course of every year. There is nothing in this language which could be interpreted as authorizing the employee to accumulate year after year the vacations granted by the law. On the contrary, from the language used it is sufficiently clear that the legislator intended that the employee enjoy his vacation every year. And certainly this is the interpretation which is consonant with the purpose which inspires this type of legislation. It is the same policy pursued by private enterprise evidenced in the Minimum Wage Decrees promulgated by the Minimum Wage Board when the latter was authorized to regulate working conditions and which remained effective by provisions of § 40 (b) of Act No. 96 of June 26, 1956— 29 L.P.R.A. § 246*k* (b) (Supp. 1961). These decrees provided that vacations could not be accumulated for more than two

years. Mandatory Decree No. 6, 29 R.&R.P.R. § 245n-98(b) ; Mandatory Decree No. 7, *Id.* § 245n-117(b) ; Mandatory Decree No. 8, *Id.* § 245n-138(b) ; Mandatory Decree No. 9, *Id.* § 245n-155(a) ; Mandatory Decree No. 12, *Id.* § 245n-195(b) ; Mandatory Decree No. 13, *Id.* § 245n-214(b) ; Mandatory Decree No. 14, *Id.* § 245n-234(a) ; Mandatory Decree No. 15, *Id.* § 245n-254; Mandatory Decree No. 20, *Id.* § 245n-356(b) ; Mandatory Decree No. 21, *Id.* § 245n-376(b) ; Mandatory Decree No. 22, *Id.* § 245n-398(b) ; Mandatory Decree No. 23, *Id.* § 245n-427(b) ; Mandatory Decree No. 24, *Id.* § 245n-447(b).

The case of *Harrison* v. *United States*, *supra*, presents a situation similar to the one considered herein. In that case the law provided as follows :

"That the employés of the Government Printing Office, whether employed by the piece or otherwise be allowed a leave of absence, with pay, not exceeding thirty days in any one fiscal year, after the service of one year, and under such regulations and at such times as the Public Printer may designate."

It was decided that this law did not authorize accumulation of vacations since it established that the employee shall enjoy a 30-day vacation in every fiscal year. The court understood that this language did not authorize the accumulation of vacations. Evidently the language used by the Puerto Rican legislator is still more specific and clear.

However, the Legislature delegated to the Board of Personnel created by the law, Personnel Act, § 7—3 L.P.R.A. § 647—the power to regulate the granting of leaves of absence and other working conditions for the employees in the competitive and noncompetitive service providing that : "the rules shall provide for the hours of work, holidays, attendance regulations and leaves of absence and sick leaves, as well as special leaves for a just cause, with or without pay, as the case may be." Section 28, *supra*. The regulation promulgated by the Board of Personnel, as we have seen, permits an em-

ployee to accumulate up to 60 days of vacation. Although it is true that the law presupposes that the employee enjoys his vacation every year, the regulation promulgated does not violate the purpose which inspires this type of legislation, since, at most, an employee could be without vacations for a period of two years, for otherwise he would lose the right to enjoy the vacations accumulated in excess of 60 days.

■ If there were any doubt as to the validity of the regulation promulgated by the Board of Personnel, allowing accumulation of vacations when the letter of the law does not authorize it, it should be set forth that subsequent to the promulgation of the regulation, the Legislature approved Act No. 12 of May 5, 1953 and Act No. 84 of June 23, 1958, which amended the first, both of which, it may be said, sanctioned the regulation promulgated by the Board of Personnel in establishing that the maximum leave which may be accumulated is 60 days in the case of vacation leave and of 90 days in the case of sick leave. This regulation inasmuch as it allows accumulation up to 60 days may be considered more beneficial for the employee, for it allows a reasonable accumulation of vacations thus affording him the opportunity of having a longer period of rest occasionally. On the other hand, the rule must not be so inflexible as to prejudice public service in certain circumstances by unfailingly stipulating that every employee must be granted an annual vacation. Thus we understand that the regulation does not destroy the purpose of the legislation. It is in agreement therewith. The law and the regulation must be read together, and so considered both provisions aid the legislative intent.

It is pertinent to set forth that bearing in mind the legislative intention in approving this type of legislation, the appointing authority must concentrate on offering the employee the opportunity to enjoy the vacations granted by the law, and that within the necessity of the service, they should insist that they annually enjoy their period of rest.

■ In view of the foregoing it is unnecessary to consider the second question as to whether or not it was proper to credit vacation during the days in which plaintiff was enjoying his leave before his resignation became effective, since in such an event, it would be academic to so decide because he could not enjoy the same, for it would exceed 60 days in one calendar year.

The judgment rendered by the Superior Court, San Juan Part, on May 16, 1958, shall be reversed and another rendered instead with the following pronouncements: (a) since plaintiff enjoyed 60-day leave for accumulated vacations, the granting of an additional license in excess of the 60 days enjoyed does not lie and (b) the provisions of paragraphs b and c of the Personnel Regulation—3 R.&R.P.R. § 647–114—are valid.

Mr. Justice Blanco Lugo concurs in the result. Mr. Justice Santana Becerra dissented in a separate opinion in which Mr. Justice Belaval and Mr. Justice Hernández Matos concur.

———

MR. JUSTICE SANTANA BECERRA, with whom MR. JUSTICE BELAVAL and MR. JUSTICE HERNÁNDEZ MATOS concur, dissenting.

I have nothing to object to the generalizations underlying the opinion of the Court. I do not dispute the public policy which inspires the sound rule of granting vacations to public employees for their own benefit as well as for the efficiency of the service. I agree that the actual legislation contains a strong legislative expression to the effect that vacations should be enjoyed annually and that when granted by law, it was not intended that they be accumulated indefinitely at the employee's whim or convenience, so as to enjoy them later all at once, or to receive their equivalent in money at one time. Aside from the fact that this would destroy the *raison d'etre* of the interim period of rest for the sake of the

employee's health and efficiency, it would also disorganize public service. That is evident.

But justifiable controversies are inevitably tied to a fact because judicial function is not exercised in the abstract. And just in case it should be implied that the case at bar is one of those which deny the good normative principles of enjoyment of vacation, we state the facts here as follows:

Plaintiff held the office of attorney in the Housing Authority of Puerto Rico effective as of July 18, 1950 in the Competitive Service. On July 15, 1955 he actually ceased by a resignation which was accepted as effective at the end of a period of vacation which the Authority determined was 55 working days. The resignation became effective September 23, 1955, at the expiration of the aforesaid 55 days. During this time he, of course, enjoyed his salary. According to the stipulation of facts by the parties on which the trial court based its judgment, the vacation situation was the following:

(1) Between July 18, day in which he began to work, and December 31, 1950, plaintiff was entitled by law to 13½ days of vacation, enjoyed 1½, accumulating 12 days.

(2) In 1951 he accumulated 30 days, enjoyed 1½, leaving a difference of 28½ days, plus 12 days of the previous year for a total accumulation of 40½ days.

(3) In 1952 he was entitled to 30 days, enjoyed 45, accumulating 25½ days of vacation at the end of the aforesaid year.

(4) In 1953 he was entitled to 30 days, enjoyed 9, accumulating at the end of the year 46½ days.

(5) In 1954 he was entitled to 30 days, enjoyed 24 days, accumulating at the end of the year 52½ days.

(6) From January 1 to July 15, 1955, day on which he actually ceased rendering service to begin enjoying his final vacation, he was entitled to 16 days, enjoyed 5, leaving a remainder of 11 days, accumulating a total of 63½ days of vacation on July 15.

438

Plaintiff maintains that he had the right to enjoy those 63½ days of final vacation with pay and not 55 days as the Authority determined. Perhaps it would be convenient to state now, because it is of some importance respecting the approach of the problem raised, that this case does not involve the *payment* in cash in substitution for the enjoyment of time, of accumulated vacations. The problem herein is overly simple, involving the administrative application of certain provisions of personnel legislation.

Section 28 of the Act which created the Personnel Office of the Commonwealth Government—Act No. 345 of May 12, 1947, 3 L.P.R.A. § 668—provides the following:

"All employees in the competitive and non-competitive services, except emergency employees, shall be entitled to leave of absence and vacation at the rate of two and one-half days for each month of service, and to sick leave at the rate of one and one-half days for each month of service, excluding in both cases Sundays and legal holidays. The appointing authority shall, in agreement with the employees, determine the date on which the latter shall enjoy their annual leave during the course of any one year, in the manner most compatible with the needs of the service; Provided, That each employee shall be entitled to said leave during a period of not less than fifteen (15) consecutive days.

"The rules shall provide for the hours of work, holidays, attendance regulations and leaves of absence and sick leaves, as well as special leaves for a just cause, with or without pay, as the case may be."

Section 7 of the aforesaid Act No. 345 provided that the Board of Personnel ... shall prescribe rules *not in conflict with said Act*, for the enforcement of same, which rules upon their approval by the Governor, shall be promulgated and shall have the force of law. Among other things, such rules shall provide for ... the fixing of hours of work, attendance regulations, *the granting of leaves of absence*, and other working conditions for the employees in the Competitive and Non-Competitive Service, and that the powers conferred upon the Director of Personnel shall be subject to the provisions

of the Act and of the aforesaid rules. The rules promulgated by the former Civil Service Commission by authority of Act No. 88 of 1931 remained in effect under the above-cited section until new rules were adopted.

The preceding provisions of this Act insure the public employee a right to vacations not guaranteed before, at a time when such right was already recognized to other types of workers. The legislation on government service which was in force when the present Personnel Act was approved, which was Act No. 88 of May 11, 1931 and which created the former Civil Service Commission, did not grant public employees the right to enjoy vacations. The provisions concerning that particular appear briefly in paragraph (11) of § 10 of that Act, upon defining "duties of the Commission": "To provide the manner of fixing the hours of work, checking attendance, making payments for overtime, establishing training classes *and handling annual*, sick and special *leaves of absence* with or without pay." (Italics ours.)

The Commission provided in its Rule XXXIX that heads of departments and other services *could* [permission was given them] grant leave with pay, when it was not incompatible with the necessities of the service. They *could* grant leave for not more than two days and a half for each month of service, Sundays and holidays excepted. It was provided that the employee *could* choose not to take that leave and accumulate it, but he would not be granted leave for a period greater than sixty days in any calendar year. Rule XXXIX established that leaves *would be subject to the discretion of the official* who had the power to grant them and did not constitute an inherent *right* of the employee, except in cases of sickness or physical disability.

I mention the previous legislation because it clearly shows what the legislator wished to repudiate with the new Act, in granting the employee *the right* to enjoy vacations at the rate of two days and a half for each month of service during the

440

tenure of the office or employment, beyond administrative caprice or discretion, whether nominating officer or personnel agency. I also mention it because it explains the *raison d'etre* of the clause limiting the enjoyment of leave in a calendar year to not more than sixty days, as a method of protection to the service, considering that the rule itself empowered the employee to enjoy his leave or to accumulate it.

On September 9, 1952 the Governor approved the Rules of Personnel and they were promulgated. The following provisions of Rule 8 (3 R.&R.P.R. § § 647–114, 647–116) are pertinent to the controversy of this case:

"(4) Vacation leave

"(a) All the competitive and non-competitive service employees, except emergency employees, are entitled to vacation leave at the rate of two and one-half (2½) days for each month of service, excluding Sundays and holidays. The appointing authority shall, in agreement with the employees, determine the date at which the latter shall enjoy their annual leave during the course of any one year, in the manner most compatible with the needs of the service. However, each employee is entitled to vacation leave during a period of not less than fifteen (15) consecutive days.

"(b) Employees who fail to take the vacation leave granted by the Act, may accumulate same up to a maximum of sixty (60) working days at the end of any one year.

"(c) The appointing authorities may grant a vacation leave in excess of thirty (30) days in any one year to employees who have accumulated leave as provided in (b) above. However, the vacation leave may not exceed sixty (60) working days in any one calendar year."

"(6) Leave payments in case of separation

"(a) Each employee who is separated from the service for any cause, except death, dismissal or dereliction of service, is entitled to receive payment for a maximum of 60 working days, for such vacation leave as he may have accumulated under the Act and this division.

Section 28 of Act No. 345 is clear and specific inasmuch as it was the intention of the Legislature to provide by law

that public employees in the Competitive Service and the Non-Competitive Service enjoy annual vacations at the rate of two days and a half for each month of service, that is, 30 days of vacation a year, excepting Sundays and holidays. The legislative mandate to the appointing authority to determine, according to the employees, the date in which the latter shall enjoy those annual vacations *during the course of every year*, depending on the necessities of the service, is also clear and unequivocal and just as clear is the Legislature's mandate that the employees shall enjoy their annual vacations taking at least a period of 15 consecutive days.

Act No. 345 does not assimilate or set forth on its face the concept of accumulation of vacations for more than one year without enjoying them. This being a significant fact, because the lawmaker was familiar with the fact that under the effective rules of the Civil Service Commission which remained valid until new ones were adopted, the situation was different.

Rule 8 adopts the previous criterion of permissible accumulation of vacations corresponding to more than one year, without defining the concept of accumulation: —"The employees *who fail to take* the vacation leave . . . *may accumulate* . . ." (Rule 8(4) (b) )—despite the definite legislative mandate to the contrary. However, I am in no position to affirm, nor do I believe it is necessary for the decision of this case, that such administrative provision is clearly void or is in open conflict with the law as contrary to the basic rule thereof considering the provisions of § 7, *supra*, and I presume, in the absence of specific information not offered by the record of this case nor other published sources, that there was some reason for adopting the regulation 5 years later, based perhaps in past experience or in the necessities of the service, thus, permitting an accumulation. Anyhow, if there is doubt, it is decided in favor of the regulation in what respects accumulation of vacations for more than one year, although

it should not be forgotten that the legislative mandate of § 28 remains unchanged and in full force. The normal practice should be that the appointing authority guarantees to the employee the enjoyment of vacation within each calendar year. Any accumulation should be an exception justified by reasons of the service, not the choice of the employee, or of the appointing authority, or of the convenience of both.

Let us examine the situation in the light of the foregoing. Paragraph (a) of subdivision 4 of Rule 8 substantially reproduces the statute. Paragraph (b) provides that the employees "who fail to take the vacation *leave*" may accumulate same up to a maximum of 60 days at the end of any calendar year. No distinction is made among the causes for failing to take the leave, whether by mere choice or convenience of the employee, or because the appointing authority has not made the determination, or because justifiably or not it has refused to grant it. Turning back to § 28, it provides that the Rule shall provide vacation "leaves", and § 7, that they shall provide the "granting of leaves." The rule itself states in its text that the "leave" may be accumulated up to the maximum it fixes. Taken as a whole, the aforesaid paragraph (b) can have no other meaning or interpretation than that of limiting to 60 days the maximum period of an ordinary vacation *leave*, which limitation may be fully justified by reason of the necessities of the service and its good functioning. More forcefully and clearly it appears in the following paragraph (c) which supplements paragraph (b). If we were to interpret said paragraphs in the sense that they limit the substantive right to vacation granted by the Act to a maximum of 60 days at the end of one year, and that any excess over 60 days of accumulated vacations at that moment is voided or annulled, we would place these provisions at the margin of the sphere of the regulation permissible under the statute.

Paragraph (a) of subdivision 6 of Rule 8—"Leave payments in case of separation"—unquestionably follows the pattern of paragraphs (b) and (c) of subdivision 4. It establishes that the employee who is separated from the service is entitled to *receive payment* up to a maximum of 60 working days for such vacation leave as he may have accumulated under the provisions of the Act and of the Rules. If this rule refers to the payment in cash for accumulated vacations at the end of the employment, which could be necessary to speed replacement by a new employee, the same can have no other meaning than that of limiting said payment to the equivalent of 60 days. There may be justifiable reasons, as for example insufficient funds, for this limitation.

Two separate concepts are involved between the Act and the administrative regulation: (1) the substantive right to vacation granted to the employee by the legislator, and (2) the functional concept of the *leave* which in the mechanics of the service is equivalent to permission, authorization, or official consent for the enjoyment of that substantive right at a specific moment. To treat them as the same thing is, in my opinion, an error. It is clear to me that the rule constitutes an ordering of the latter, and not an alleged invasion of the former, administratively cancelling every right to vacations earned by law in excess of 60 days.

As long as the administrative regulation is interpreted and applied as was done by the defendant Authority, that is, as a permissible regulation of the substantive right to vacation with pay to which the employee is entitled under the law, at the rate of two and a half days for each month of service during the entire time of tenure, said interpretation and application shall situate the rule beyond the legal scope of a permissible regulation as to the manner of using and enjoying such right, since it would impose a limitation *in the extent or content* of the substantive right itself as the same is granted by

the Act.[1] Such limitation was not imposed by the legislator himself in spite of the fact that he knew that it existed under the former Rule XXXIX which was then a law.[2] Undoubtedly it was due to the fact that under the new public policy adopted guaranteeing a right to vacations the cases of accumulation should not ordinarily arise, if due compliance is given to the mandate of § 28. The record does not permit us to conclude whether the situation which arose herein was due to plaintiff's will as an employee, or that the appointing authority did not make the pertinent determination, or that the demands of the service prevented the annual enjoyment of the entire time. Each case must be decided on its own facts, and the facts of the case at bar do not show purposes contrary to the rules of Act No. 345 on the employee's part. Although the present case perhaps would not merit being remanded for the purposes set forth below, in view of the fact that only 3½ days were accumulated in excess of the Rule, the least that should be done in a more significant case is to determine whether an excessive accumulation was the result of the employee's convenience or of an attitude of the appointing power, whether or not justified, which prevented timely

---

[1] Cf. Chabrán v. Bull Insular Line, 69 P.R.R. 250, 255, 256; Roig Commercial Bank v. Treas. of P.R., 74 P.R.R. 919, 933-34; Lugo v. Marini, 72 P.R.R. 483-86; Ex parte Irizarry, 66 P.R.R 634-38; Buscaglia, Treas. v. Tax Court, 67 P.R.R. 53, 60; Descartes, Treas. v. Tax Court, 71 P.R.R. 440, 445-46; Villa v. Industrial Commission, 65 P.R.R. 527, 532-33; Colón v. Tugwell, Governor, 65 P.R.R. 869, 871-72; Addison v. Holly Hill Co., 322 U.S. 607, 610 et seq.; Comm'r v. Acker, 36 U.S. 87, 89; Teamsters Local v. Labor Board, 365 U.S. 667, 674; Metlakatla Indians v. Egan, 369 U.S. 45; F.C.C. v. American Broadcasting Co., 347 U.S. 284; Manhattan Co. v. Commissioner, 297 U.S. 129, 134; Miller v. United States, 294 U.S. 435, 439. See, WADE, Administrative Law, Delegated Legislation 257 et seq. (1961); ANDRÉS SERRA ROJAS, Derecho Administrativo, La Facultad Reglamentaria, Noción del Acto Administrativo 319–321, 364 et seq. (2d ed. 1961); KAPLAN, The Civil Service Law, Powers of Personnel Agencies 104 (1958); CARL KUCHMAN, California Administrative Law and Procedure 85 et seq. (1953).

[2] The power granted by Act No. 88 of 1931 to the previous Civil Service Commission was entirely legislative in nature in what respects vacations, very different to that power granted by Act No. 345 to the Board of Personnel which is merely regulatory.

445

enjoyment. I would be naive to believe that the employee, the weaker party, can always make his right to take a leave prevail against the attitude, whether or not justified, of the appointing authority, without risking disciplinary sanctions or charges for dereliction of the service. Aside from the legal issue involved, from the viewpoint of what is reasonable, it would be unjust that an employee whose vacations have accumulated through no fault of his own be applied an administrative rule which as interpreted by the Housing Authority eliminates all vacations granted by law in excess of 60 days.

Act No. 12 of May 5, 1953 and Act No. 84 of June 23, 1958, which amended the former, probably suggested by the personnel agency itself, because this subject matter is of its particular concern, and which covers special situations, do not show a legislative purpose of restricting substantively the right granted by § 28 of Act No. 345.[3]

Only under a legislative provision to the contrary as specific as the one which granted the right, would I consider that this plaintiff who by law was entitled during his tenure of office to 149½ days and who enjoyed 86, as stipulated, does not have the right to enjoy vacations for the 63½ remaining days instead of 55. Since the salary paid only covered this period, plaintiff is entitled to be paid by defendant the salary corresponding the period of 8½ additional days which he should have enjoyed. *Cf. Rivera* v. *District Court*, 72 P.R.R. 691, 693; *P.R. Auto Corporation* v. *District Court*, 73 P.R.R. 323, 326. The judgment of the trial court acknowledging plaintiff this right should be affirmed.

In another appeal filed by plaintiff, on the ground that he had the right to vacation at the rate of 2½ days during the period of July 15 and September 23, 1955, when he was

---

[3] Act No. 12 of 1953 refers to vacations accumulated during the Exempt Service, beyond the Personnel Act. The amendment of 1958 refers to transfers of an employee from one agency to another within the three services, and his substantive right to vacations is not restricted either. See, II-2 Journal of Proceedings 903 (1953); IV-10 p. 1973 (1958).

446

enjoying vacation, the judgment which denied him such right should also be affirmed.   An employee who presents his resignation and actually stops working, only that the resignation is effective at the end of his vacation, is not rendering services any more in the sense and for the purposes of § 28 of Act No. 345.