## UNITED STATES *v.* MILLS.

### APPEAL FROM THE COURT OF CLAIMS.

No. 509. Submitted February 20, 1905.—Decided March 13, 1905.

The ten per cent increase over and above pay proper allowed to an officer of the United States Army for service in Porto Rico, Cuba, Philippine Islands, Hawaii and Alaska, under the act of May 26, 1900, 31 Stat. 211, and beyond the limits of the States comprising the Union and Territories contiguous thereto under the act of March 2, 1901, 31 Stat. 903, is to be computed upon the total amount to which the officer is entitled at the time of such service both for longevity pay and the pay provided for by § 1261, Rev. Stat.

THIS is an appeal from a judgment of the Court of Claims in favor of the appellee. The question relates to the amount of compensation payable to him under the acts of May 26,

1900, and March 2, 1901, making appropriations for the Army. The particular provisions of these acts are set forth in the margin.[1]

The court gave judgment in favor of appellee upon the authority of its opinion in *Irwin* v. *United States*, 38 C. Cl. 87.

The facts found by the court are as follows:

"The claimant, Stephen C. Mills, entered the military service of the United States as a cadet at the Military Academy, July 1, 1873, was commissioned second lieutenant June 15, 1877, and by successive promotions became major and inspector-general July 25, 1888, and lieutenant-colonel and inspector-general February 2, 1901, and still holds the last-named rank and office.

"The claimant was, by proper military orders, on duty with the Army of the United States in the Philippine Islands from a date prior to May 26, 1900, continuously until April 15, 1902, when, in accordance with orders, he arrived at San Francisco, California, on his return from said Philippine Islands. During all of that period he was serving in the Philippine Islands and beyond the limits of the States comprising the Union and the Territories of the United States contiguous thereto.

"During the entire period from May 26, 1900, to April 15, 1902, named in the next preceding finding, the claimant while

---

[1] Act of May 26, 1900, 31 Stat. 205, 211.

"That hereafter the pay proper of all officers and enlisted men serving in Porto Rico, Cuba, the Philippine Islands, Hawaii and in the Territory of Alaska shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law in time of peace."

Act of March 2, 1901, 31 Stat. 895, 903; 1 Comp. Stat. 896.

"That hereafter the pay proper of all officers and enlisted men serving beyond the limits of the States comprising the Union, and the Territories of the United States contiguous thereto, shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto."

holding the rank of major was paid at the rate of $2,500 a year, the minimum pay of the grade of major established by section 1261 of the Revised Statutes; $1,000 longevity increase established by section 1262 of the Revised Statutes, and $250 a year as the increase of ten per cent. upon his pay proper provided by the act of May 26, 1900, 31 Stat. 211, but calculated only upon the minimum or grade pay fixed by said section 1261.

"While holding the rank of lieutenant-colonel during said period the claimant was paid at the rate of $3,000 a year, the minimum pay of that grade as provided by section 1261 of the Revised Statutes, $1,000 longevity increase provided by section 1262, and $300 a year as ten per cent. increase on his pay proper as provided by the acts of May 26, 1900, and March 2, 1901 (31 Stat. 211, 903), but computed only on the minimum pay of the grade.

"If said ten per cent. increase should be calculated upon the total pay of $3,500 received by the claimant while in the rank of major, his increase would be at the rate of $350 a year instead of $250, and if so calculated while he was in the rank of lieutenant-colonel the increase would be at the rate of $400 a year instead of $300, making a difference of $100 a year for the period covered by the claim, and aggregating for the entire period $188.87."

*Mr. Assistant Attorney General Pradt* and *Mr. Special Attorney John Q. Thompson* for the United States.

*Mr. George A. King* and *Mr. William B. King* for appellee.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The question is, upon what principal sum the ten per cent increase of compensation, to which the Government concedes the appellee is entitled, is to be computed. The appellee as

major was entitled, by section 1261 of the Revised Statutes, 1 Comp. Stat. 893, to the pay of $2,500 a year. Subsequently as lieutenant-colonel he was entitled, by the same section, to the pay of $3,000 per year. By the following section, 1262, 1 Comp. Stat. 896, it is provided that there shall be paid to the officers below the rank of brigadier-general "ten per centum of their current yearly pay for each term of five years of service," and by section 1263 the total amount of such increase for length of service cannot exceed, in any case, "forty per centum on the yearly pay of the grade as provided by law." Under section 1262 the appellee had become entitled to pay to the amount of $1,000 a year in addition to the pay provided for in section 1261; thus, as major, he was entitled to $2,500 per year, and under section 1262, $1,000 more, or $3,500 under these two sections; as lieutenant-colonel he was paid $3,000 per year under section 1261 and $1,000 more under section 1262, or $4,000 under these two sections. He contended that the additional ten per cent under the acts of 1900 and 1901 should be computed on the respective sums of $3,500 and $4,000, the total compensation granted by the two sections, while the Government insists that the percentage must be computed upon the sums of $2,500 and $3,000 respectively, the minimum pay granted to the grades of major and lieutenant-colonel.

The Court of Claims directed the computation to be made on the total of the sums given by the two sections, and in our opinion that court was right in so doing. The term "pay proper" used in the acts of May 26, 1900, and March 2, 1901, includes, in our opinion, the longevity pay under section 1262 as well as the sum named as pay under section 1261, the latter being the minimum sum for the grade. Every five years of service, under section 1262, up to a certain percentage of the yearly pay of the grade, as provided by law, section 1263, entitles the officer to be paid ten per centum of his yearly pay. The term "current yearly pay," (sec. 1262), was the subject of examination as to its meaning in *United States* v. *Tyler*,

105 U. S. 244. The case related to the claim of a retired officer, and the question was, whether he was entitled. to the benefit of the section (1262) after his retirement; and, also, if he were so entitled, how was the computation to be made. The court held that he was entitled to the benefit of the section, and that the percentage was to be computed on the total amount of the pay of the officer, increased as it might be by the periods of five years of service. Thus the increased pay derived from additional periods of five years' service was added to the minimum pay of the grade, and ten per centum of that total was held to be the proper compensation.

The Government, however, contends that the term "current yearly pay," mentioned in section 1262, has a different meaning from the term "pay proper," contained in the acts under discussion, and it insists that the latter term is not as comprehensive as the former. We do not think that there is any such material difference between the two expressions as in this case to demand their different construction. "Current yearly pay" and "pay proper," as used in the sections, mean the regular, ordinary pay which an officer may be entitled to under the facts in his case, and if, by virtue of length of service, he is entitled to receive the compensation provided for in section 1262, that compensation is his "pay," or his "pay proper," as distinguished from possible other compensation by any allowances, or commutation, or otherwise. The method of computation adopted herein by the Court of Claims is the same as that adopted in *United States* v. *Tyler, supra;* that method has therefore received the approval of this court, or at least it has been held that the ten per centum of the current yearly pay is to be calculated upon the aggregate pay provided for in the two sections (1261 and 1262), and not merely upon the minimum pay granted by section 1261.

In regard to retired officers, Congress subsequently provided otherwise. 22 Stat. 117, 118.

The words, "pay proper," we see no reason to think are to be construed differently from the word "pay." The term

means compensation, which may properly be described or designated as "pay," as distinguished from allowances, commutations for rations or other methods of compensation, not specifically described as pay.

The Government refers to the act of Congress approved March 15, 1898 (army appropriation act, 30 Stat. 318), as giving some ground for the contention it makes in this case, because, as is stated, Congress itself therein distinguishes between "pay proper," and "additional pay for length of service," and it is urged that pay proper does not include longevity pay in the opinion of Congress as expressed in the act. The provision of the act is as follows:

"For pay proper of enlisted men of all grades, four million two hundred and ninety thousand dollars.

"Additional pay for length of service, including hospital corps, six hundred and seventy-one thousand one hundred and seventy-two dollars."

The act cited by the Government, it will be seen, refers to enlisted men and not to officers at all. In that same act of 1898 provision for the payment of officers is in the following language (30 Stat. 318):

"For pay of officers of the line, two million eight hundred sixty-five thousand dollars.

"For pay of officers for length of service, to be paid with their current monthly pay, seven hundred and ninety thousand dollars."

And in the appropriation act of March 3, 1899, the appropriation for enlisted men was changed so that it reads as follows (30 Stat. 1064, 1065):

"Pay of enlisted men of all grades, including recruits, thirteen million five hundred thousand dollars.

"For additional pay for length of service, seven hundred and twenty-five thousand dollars."

Under the language of the act of March 15, 1898, the Comptroller of the United States had held that the language used in that act showed that the compensation of enlisted men,

upon which the per centum provided for was to be computed, was the minimum pay, not enlarged by any longevity pay to which the person was entitled. At the very next session of Congress the form of the appropriation was changed, as we have seen. That change has been continued since. See acts of May 26, 1900, 31 Stat. 206; March 2, 1901, 31 Stat. 896; June 30, 1902, 32 Stat. 508; March 2, 1903, 32 Stat. 929, and April 23, 1904, 33 Stat. 260.

The ground for arguing that the term "pay proper" does not include the "additional pay for length of service" was thus taken away by a change in the form of the appropriation in all the acts subsequent to that of 1898. As we have already stated, however, that particular form in regard to enlisted men in the act of 1898 was never adopted, providing for the pay of officers. Their regular compensation and their compensation by reason of longevity services are both spoken of in that act as "pay."

We have no doubt that the pay of the officer under the statutes of 1900 and 1901, in connection with the Revised Statutes referred to, consists of the amount granted for longevity service as well as of the amount provided in section 1261, and that the total is "pay proper," upon which total the percentage is to be computed provided for in the acts of 1900 and 1901. Our attention has not been called to any decision of this court looking to the contrary principle.

The judgment of the Court of Claims is right and must be
*Affirmed.*