Peelle, Ch. J.,
delivered the opinion of the court:
The claimant, a lieutenant-commander in the Navy, while serving under orders of the Navy Department on shore duty beyond seas, received the following order:
“ Navy Department,
“ Washington, September IS, 1905.
“ SiR: You are hereby detached from special duty at St. Petersburg, Russia, and from such other duty as may have been assigned you, will proceed to Washington, D. C., and report to the chief intelligence officer, Mills Building, Navy Department annex, for duty in the Office of Naval Intelligence.
“ This employment on shore duty is required by the public interests.
“ Respectfully,
(Signed) “ Citas. H. Darling,

“Acting Secretary.

“ Lieut. Newton A. McCtjlly, U. S. Navy,
“ In care of U. S. Ambassador, St, Petersburg, Russia.
“(Office of Naval Intelligence.)”
. From the date of departure from the United States, and while serving on shore duty beyond seas, prior to that order, the claimant was paid the full pay of an officer of the Army of corresponding rank, plus 10 per cent additional, under section 13 of the act of March 3, 1899 (30 Stat. L., 1007), providing, inter alia, “ That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places,” and the act of March 2,1901 (31 Stat. L., 903), making appropriations for the Army, whereby the pay proper of officers of the Army for services beyond the limits of the United States and the Territories contiguous thereto is in *278 creased 10 per centum, such, service being “ counted from the date of departure from said States to the date of return thereto.”
That act was followed by the act of March 3, 1901 (31 Stat L., 1108), making appropriations for the Navy, wherein it was, in substance, provided that when naval officers are detailed for duty in our island possessions or elsewhere beyond the continental limits of the United States thejr shall be considered as detailed for “ shore dxxty beyond seas,” and “ shall receive pay accordingly with such additional pay as may be provided by law fQr service in island possessions of the United States.”
Under these statiit'es the claimant contends that notwithstanding his detachment from special duty at St. Petersburg, he is entitled to be paid the increase of 10 per cent from the time of his departure from St. Petersburg until his return to the United States.
The defendants insist that when the claimant was detached from special duty at St. Petersburg his detail for shore duty beyond seas then and there ceased, and that he then and there became entitled to his ordinary shore pay, less 15 per cent.
So far as we are advised, the ruling has been uniform that where an officer of the Navy is detached from sea duty he at once ceases to be entitled to sea pay, and for the same reason when such officer has been detached from shore duty beyond seas his pay for that service ceases unless the provisions of the act of March 2,1901 (supra), providing that “ the time of such service shall be counted from the date of departure from said States to the date of return thereto ” is controlling.
Therefore, in order to determine the claimant’s right, we are required to construe those words. The claimant was paid full sea pay, plus the increase of 10 per cent, from the 'date of his departure from the United States to the date he was so detached from special duty, and such we are advised is in harmony with the ruling of the accounting officers, on the ground that when the claimant sailed from the United States he xvas traveling under the order of detail for shore duty beyond seas, while on his return voyage he was traveling-under the order detaching him therefrom and ordering him to shore duty in Washington.
*279 If the statute authorizes the payment of the increase of 10 per cent to the .date of his return to the United States, then the order detaching the claimant from duty at St. Petersburg would not operate to deprive him thereof, nor would it operate to place him on ordinary shore duty until his return to the United States.
As the time of service which the act provides, “ shall be counted from the date of departure from said States to the date of return thereto,” evidently means time of service “ beyond the limits of the United States,” it follows that when an officer of the Navy is detailed for shore duty beyond seas, his service under such detail begins upon his departure from the United States and ends when he returns thereto.
The language of the act respecting the right of such officers to the increase of 10 per cent from the date of their departure from to the date of their return to the United States is clear and unambiguous; and the language is equally clear respecting the basis upon which that increase is to be computed, i. e., “ the pay proper as fixed by law for time of peace.”
In the case of United States v. Mills (197 U. S., 223), affirming this court in the Irwin case (38 C. Cls. R.., 103), the court held that the words “ pay proper ” should not be construed differently from the word “ pay,” which included the amount granted for longevity service as well as the amount provided by Pevised Statutes, section 1261, and that the two amounts, or total, is “ pay proper,” upon which total the percentage is to be computed, as provided for by the acts herein referred to.
Whether the claimant would have been entitled to the 10 per cent increase had he, upon his detachment from such special duty ánd before returning to said States, been assigned to sea duty is not before us and, therefore, not decided.
Our conclusion is that the claimant is entiled to recover the 10 per cent increase computed on his “ pay proper,” as indicated above, and judgment is ordered accordingly for $66.62.