In the Matter of the Application of MARCUS D. KOGEL, Petitioner, for an Order against JOSEPH D. McGOLDRICK, Comptroller of the City of New York, and Another, Respondents.

Supreme Court, Special Term, Queens County, February 17, 1942.

*Bernstein, Weiss & Tomson* [*Bernard Tomson* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel* [*Oscar L. Tucker* of counsel], for the respondents.

Nova, J. The sole issue to be determined in this proceeding under article 78 of the Civil Practice Act is the amount of pay differential which the petitioner is entitled to receive from the city of New York, pursuant to subdivision 1 of section 245 of the Military Law, the constitutionality of which has recently been upheld by the Court of Appeals. (*Hoyt* v. *County of Broome*, 285 N. Y. 402.)

Petitioner is and since 1936 has been the medical superintendent at the Queens General Hospital. For a period of fourteen years he has been an officer in the United States Army Reserve, attaining the rank of Major some time prior to February 13, 1941, when he was ordered to active military duty in the United States Army in the capacity of Major, Medical Corps. He is now the Director of the Department of Military Sanitation of the Medical Field Service School, United States Army, stationed at Carlisle Barracks, Pennsylvania.

When petitioner was ordered to active duty, he was receiving from the city as compensation for his services as medical superintendent the sum of $4,500 per annum, with maintenance for himself and his family, the value of which maintenance for the purposes of this proceeding has been stipulated to be the sum of $2,250 per annum. As a Major in the United States Army, he receives a salary of $3,300 per annum, $3,000 of which is the regular pay of a Major and the balance is ten per cent increase for more than twelve years of reserve service. He receives in addition from the United States government a cash allowance for quarters at the rate of $100 per month and a cash allowance for subsistence at the rate of $54 per month.

Prior to his induction into active service, petitioner and the department of hospitals made an arrangement whereby on condition of the department's permitting his family to be maintained in the superintendent's quarters at Queens General Hospital as heretofore for the period of his ordered service of one year, he

agreed to waive differential pay to which he would be entitled under section 245 of the Military Law, less pension deductions. Accordingly for the thirty-day period from February 13 to March 15, 1941, petitioner was paid his regular salary at the rate of $4,500 per annum and his family maintained. (See Military Law, § 245, subd. 1, 3d sentence.) Thereafter his family received maintenance in accordance with said arrangement until November 10, 1941, when they vacated the hospital quarters at the request of the department made pursuant to an opinion of the corporation counsel, dated October 27, 1941, the pertinent portion of which reads as follows: " Dr. Kogel is not entitled to have computed in his civilian compensation the value of the maintenance previously received by him when he was actually present performing his civilian duties at the hospital. Furthermore, there is no statute or rule of law which authorizes a hospital to maintain the family of any person unless it is an incident to the actual performance of hospital duties by such person."

It is to be noted that the corporation counsel concedes on page 3 of his memorandum that the fulfillment of this arrangement " was not intended to and does not prejudice either party to this proceeding." Moreover, in paragraph " 10 " of the stipulation dated January 27, 1942, made by the attorneys for the respective parties hereto, it was stipulated that " The City is willing to pay the petitioner, for the period subsequent to March 15, 1941, the difference between $4,500 per annum and $3,300 per annum, and to continue to pay this difference pursuant to the Military Law less appropriate credit for overpayment if any previously made, but the petitioner claims he is entitled to the difference between $6,700 per annum and $3,300 per annum, less the value of the maintenance already provided."

Thus, the position of the city is that in determining the pay differential to which petitioner is entitled under section 245 of the Military Law, the maintenance which he received in addition to his cash salary is not to be considered as part of the compensation paid him by the city as the medical superintendent of Queens General Hospital. As an alternative proposition, the city argues that if such maintenance is considered part of such compensation then the quarters and subsistence allowances received by the petitioner from the United States should be included in computing his compensation as a Major in the United States Army.

A careful examination of both the primary and alternative positions taken by the city leads the court to the conclusion that neither is tenable nor justified by the language of the statute or the authorities. Under said statute " every officer and employee

of the State or of a municipal corporation or of any other political subdivision thereof who is a member of the National Guard or Naval Militia, or a member of the Reserve Corps or force in the Federal military, naval or marine service," is entitled to full pay during his absence on ordered military duty provided such period does not exceed thirty days in any calendar year. If the period of such absence in any calendar year exceeds thirty days, it is provided that " he shall receive for the period of absence in excess of thirty days [1] such part of his salary or compensation as such officer or employee [' of the State or of a municipal corporation or of any other political subdivision thereof '] as equals the excess, if any, [2] of such salary or compensation *paid to him for the performance of such* [military] *duty."* (Numbers, brackets and italics mine.)

It needs no citation of authority to hold that *both* maintenance and the cash salary which the city paid to petitioner at the time of his induction into ordered active military service constituted " his salary or compensation " as an officer or employee of the city within the meaning of the statute. In determining the amount of deductions for pension purposes and in considering the amount of retirement and other benefits, both maintenance and cash salary are considered by the city as the basis therefor. Rule 39 of the Rules and Regulations for the Administration and Transaction of the Business of the New York City Employees ' Retirement System and for the Control of its Funds, adopted by the board of estimate and apportionment on March 28, 1924, calendar No. 53, provides as follows: " When there is no specific budgetary determination by the Board of Estimate and Apportionment of the gross compensation of a member to whom maintenance is allowed in the Budget, *his earnable compensation exclusive of maintenance, shall be increased by 50 per cent for the purpose of computing the gross earnable compensation to be used as a basis for deductions from compensation for annuity purposes and for the payment of retirement and other benefits."* (Italics mine.)

Moreover, when the city reduced the salaries of municipal employees under its Economy Act (Laws of 1932, chap. 637) and enforced furloughs (Laws of 1934, chap. 178), the reductions and furloughs imposed upon the petitioner were computed upon both maintenance and cash.

In the resolution passed by the board of estimate and apportionment on December 29, 1932, it was provided that in determining the compensation of a person who receives maintenance " it shall be determined in each case what converted money value is given to the maintenance * * * in determining the pension rights * * * and the reduction in the compensation * * * shall

be made as if he received his compensation plus the converted money value of his maintenance used in determining his pension rights and as if he belonged to the group receiving a compensation equal to his compensation plus the converted money value of his maintenance used in determining his pension rights." The same procedure was followed in respect to the 1934 furlough.

Finally, petitioner's income tax payments were made on the basis of salary or compensation, which included both maintenance and cash. The department of hospitals' instructions to employees receiving family maintenance was to the effect that such family maintenance was, for income tax purposes, to be valued at fifty per cent of the cash salary, and when notices of competitive examination for medical superintendent were issued by the civil service commission in February, 1939, it was stated that the salary was " $4,200 with maintenance or $6,300 without maintenance."

There can be no doubt, therefore, that petitioner's salary or compensation as medical superintendent was $6,750 per annum, comprising $4,500 in cash and $2,250 maintenance. This is a fact about which there can be no question even though the stipulation of agreed facts above referred to evaluated the maintenance in said sum " for the purpose of this proceeding." This view finds support in two recent opinions rendered by the Attorney-General of the State of New York in connection with his interpretation of the statute under consideration — one which he rendered on October 22, 1940 (1940 Report of Atty.-Gen., p. 227) and the second which he rendered on March 4, 1941 (1941 Report of Atty.-Gen., p. 140). In the last opinion, he said, referring to that of October 22, 1940: " You will note that the last question taken up therein was whether or not the value of the maintenance provided by law for some State employees should be considered in determining the amount of their civil compensation under Section 245 of the Military Law. *The conclusion there reached was that such maintenance is intended as a part of compensation and must be so considered.*" (Italics mine.) The Attorney-General's opinion of October 22, 1940, *supra*, dealt also with the question whether the value of military maintenance should be considered as part of the salary or compensation " paid * * * for the performance of [military] duty." In this respect, too, the conclusion reached is contrary to that urged by the respondents as an alternative if the court determines that petitioner's civil maintenance is part of his civilian salary or compensation. It is stated in the last paragraph of the opinion, at page 232 of the Attorney-General's 1940 Report: " You are correct in your statement that the *value of maintenance* while *on military service* should *not* be considered in determining the amount of *military compensation.* It is not considered as part of the compensation paid to a

soldier for the performance of military duty. (*Henn* v. *Mt. Vernon*, 198 App. Div. 152.) *On the other hand*, the compensation of those State employees who are given maintenance or a *maintenance allowance* from the State should *include* the value thereof " (Italics mine.)

Respondents disagree with this view and urge that the *Henn* case (*supra*) has limited application, inasmuch as the point actually decided by the Appellate Division, Second Department, in said case, was that the aggregate value of rations and clothing received by a soldier is not part of his military salary or compensation. They overlook, however, the fact that the decision of the Appellate Division was predicated upon its interpretation of the last clause of the statute here involved. Said the court (pp. 157, 158): " The statutory term ' compensation paid to him for the performance of such duty,' while quite broad and general, *is limited by the word ' paid.' " (Italics mine.)

In other words, in computing the excess of civil over military salary or compensation for the purpose of determining the amount due a State or municipal officer under section 245 of the Military Law, the compensation for the performance of military duty is confined to the amount *paid to the officer for the performance of such duty*. The question then is, what is the United States paying Dr. Kogel for the performance of his duty as a Major in its armed forces? Under the decisions, it is the sum of $3,300, and does not include any allowances for the value of subsistence and quarters. As said by the United States Supreme Court in *United States* v. *Mills* (197 U. S. 223, 227): " The words ' pay proper,' we see no reason to think are to be construed differently from the word ' pay.' The term means compensation, which may properly be described or designated as ' pay,' *as distinguished* from allowances, commutations for rations or other methods of compensation, not specifically described as pay." (Italics mine.)

Allowances or commutations paid to an officer in the armed service of the United States are in the nature of reimbursements for expenditures made for the convenience of the government's military establishment, and are not additional compensation for services rendered by the officer. In section 9 of title 37 of the United States Code it is provided: " Each commissioned officer on the active list, or on active duty below the grade of brigadier general or its equivalent, * * * shall be entitled at all times, *in addition to his pay*, to a money allowance for subsistence, * * *." (Italics mine.) In section 10 of title 37 of the United States Code it is provided: " * * * each commissioned officer below the grade of brigadier general or its equivalent, * * * while

either on active duty or entitled to active duty pay, shall be entitled at all times to a money allowance for rental of quarters."

These allowances, it has been held, are payable where quarters and subsistence are not furnished. (*Briggs* v. *United States*, 75 U. S. Ct. of Claims, 627, 633; *Jones* v. *United States*, 60 id. 552 [cited with approval by the Supreme Court of the United States in *United States* v. *Jackson*, 302 U. S. 628, 631]; *Smith* v. *United States*, 62 U. S. Ct. of Claims, 23.)

In the *Briggs* case (*supra*) the representative of a deceased soldier made claim to a subsistence allowance of one dollar and twenty cents a day. The court rejected this claim upon the ground that the decedent " having been furnished rations in kind was not entitled to be paid the subsistence allowance." In this court's opinion, the fact that this case involved a soldier rather than an officer, does not affect the result, inasmuch as section 9 of title 37 of the United States Code entitles an officer to a money allowance for subsistence, in addition to his pay.

In the *Jones* case (*supra*) the decision of the court contains a comprehensive discussion of the meaning of " allowances." It delves into the history thereof and concludes that allowances are intended as reimbursements and do not constitute compensation paid for the performance of an officer's duty.

The rationale of this holding is succinctly stated in the *Smith* case (*supra*, 28) as follows: "An officer is allowed quarters in which to live with his dependents in order to discharge his military duties, and the fundamental principle is that he is not entitled to commutation of quarters save he is denied the right and privilege, accorded him by the acts, of public quarters. *Jones* v. *United States*, 60 C. Cls. 552, 573. The assignment of public quarters to an Army officer is the equivalent of placing the official in that part of the Army plant where he is to discharge his duties. This is not for the officer's benefit, but for the benefit of the Government, and the principle of commutation of quarters was conceived as reimbursement. Id. 574. The law primarily in making an allowance for commutation of quarters contemplated a reimbursement. *Odell* v. *United States*, 38 C. Cls. 194. Commutation is money paid as a substitute for something to which an officer is entitled by law or regulation. *Jaegle* v. *United States*, 28 C. Cls. 133. Quarters are furnished, or expected to be furnished, officers, and when not furnished, the law allows them to obtain them elsewhere and pays a money compensation called commutation."

More recent cases holding to the same effect are *Carter* v. *United States* (79 U. S. Ct. of Claims, 166) and *Hollister* v. *United States* (92 id. 137).

It has been held that where an employer furnishes food and lodging to an employee solely for the convenience of the employer and as a necessary incident of the proper performance of the employee's duties, the value thereof is not taxable income to the employee. Thus, in *Bonaglia* v. *Commissioner of Internal Revenue* (36 B. T. A. 838, 840) the United States Board of Tax Appeals said, in connection with maintenance thus furnished to a hotel employee: " Under such circumstances, the value of meals and lodging is not income to the employee, even though it may relieve him of an expense which he would otherwise bear. [Citing *Jones* .v. *United States, supra.*]"

The Tax Department ruling in respect to army and navy female nurses is to the same effect. (See I. T. 3420, 1940; C. C. H. 1940, ¶ 6522.) There it was stated that female members of the Army and Navy Nurse Corps " are accorded the relative rank of officers with respect to allowances for rental of quarters, subsistence, and travel, and that they are rated neither as civilian employees nor as enlisted personnel." The ruling made was: " * * * the value of subsistence and quarters (allowances) furnished .the female members of the Army Nurse Corps and the Navy Nurse Corps does not constitute taxable income for Federal income tax purposes. (*Clifford L. Jones* v. *United States*, 60 Ct. Cls. 552 [1 USTC Par. 129]: T. D. 3724, C. B. IV-2, 136 [1925].) "

It is thus clear that the allowances for quarters and subsistence received by the petitioner from the United States are in no sense compensation *paid* for the performance of military duty so as to affect the pay differential to which he is entitled under the Military Law of the State of New York. Any other view would not alone be contrary to established law, but would discriminate against employees who are given maintenance as part of their civilian compensation in favor of those who receive their full compensation in cash, for it is undenied that when computing the excess of civil over military salary of those of its employees whose civilian compensation is all in cash, the city does not include quarters and subsistence allowances as part of salary or compensation paid for the performance of military duty. It is only in cases where the employee receives maintenance as part of his civil compensation that the city contends that the allowances paid by the United States to an officer on ordered military service should be considered as part of his military pay. Justice requires that both be treated equally. To uphold the contention of the respondents would have the opposite result and circumvent the clear meaning of the statute. The petitioner is accordingly entitled to the relief herein prayed for. Settle order on two days' notice.