**Chester LANEHART, et al., Appellants,**

**v.**

**Constance HORNER, et al., Appellees.**

**Appeal No. 86–595.**

United States Court of Appeals, Federal Circuit.

May 14, 1987.

Ira M. Lechner, Lechner & Butsavage, P.C., Washington, D.C., argued for appellants.

E. Kathleen Shahan, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellees. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and

Robert A. Reutershan. Also on the brief was John Salter, Office of Personnel Management, Washington, D.C., of counsel.

Before NEWMAN, BISSELL and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Appellants appeal from the judgment of the United States District Court for the District of Maryland in *Lanehart v. Devine,* 615 F.Supp. 1300 (D.Md.1985), granting appellees' motion for summary judgment, and conversely denying appellants' motion for summary judgment. At issue is the quantum of "pay" to which appellants were and are entitled during authorized absences from work under the "leave with pay" provisions of 5 U.S.C. §§ 6303, 6307, 6322, 6323 (1982). We reverse and remand.

*Background*

The facts are undisputed. Appellants are federal employees who are employed as firefighters at various military, airport and other federal installations. Firefighters are on duty for twenty-four hours and then are off duty for the subsequent twenty-four hours. During each biweekly period they have one additional twenty-four hour period off, so that they normally and regularly work six twenty-four hour shifts in a biweekly pay period. A firefighter is at the fire station for the entire twenty-four hour shift. Eight hours are designated as work status, the remaining sixteen hours being designated as standby status which includes a sleep period. Firefighters are required to respond to duty calls at any time during the twenty-four hour period.

Prior to May 1, 1974, compensation for federal firefighters was governed exclusively by Title 5 of the United States Code. This compensation consisted of an annual "basic pay" component, 5 U.S.C. §§ 5332, 5504(b) (1982), and annual "premium pay" for regularly scheduled standby duty, 5 U.S.C. § 5545(c)(1) (1982).[1]

The Fair Labor Standards Amendments of 1974 (1974 Amendments) became generally effective for federal firefighters on January 1, 1985 although for most federal employees the effective date was May 1, 1974.[2] Under the 1974 Amendments, the federal government, as employer, was brought within the coverage of the Fair Labor Standards Act (FLSA) and, in general, federal employees became entitled to overtime compensation for any workweek that exceeded forty hours. 29 U.S.C. §§ 203(e)(2), 207(a) (1982). However, in the case of firefighters employed by a public agency, a "tour of duty" standard for determining a firefighter's entitlement to overtime compensation was prescribed in 29 U.S.C. § 207(k).[3] *See Zumerling v. De-*

---

1. Section 5545(c)(1) provides in pertinent part:
   (c) The head of an agency, with the approval of the Office of Personnel Management, may provide that—
   (1) an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter....
   The annual premium pay for standby duty of firefighters is in lieu of premium pay for regularly scheduled night, Sunday, holiday and overtime duty under 5 U.S.C. §§ 5542(a), 5545(a) (1982).

2. Pub.L. No. 93–259, 88 Stat. 55, amending the Fair Labor Standards Act of 1938, Pub.L. No. 718, ch. 676, 52 Stat. 1060 (codified at 29 U.S.C. § 201 *et seq.*).

3. Section 207(k) provides, in pertinent part:
   No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if—
   (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
   (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or

*vine*, 769 F.2d 745, 747 (Fed.Cir.1985). Under this provision, if a federal firefighter is regularly scheduled to work 144 hours biweekly, FLSA provides for overtime for hours worked over and above 106 hours.[4] According to these rules, federal firefighters, who work a regularly scheduled tour of duty of 144 hours in the two-week pay period, are entitled to receive compensation in the form of: (1) the pro rata part of their annual basic pay and annual premium pay under Title 5; and (2) overtime pay under FLSA for thirty-eight hours.[5]

While FLSA is generally administered by the Department of Labor, the former Civil Service Commission, and later the Office of Personnel Management (OPM), was given responsibility under the 1974 Amendments for administering the provisions of the FLSA with respect to the federal workforce. 29 U.S.C. § 204(f). Pursuant to this authority, OPM issued a series of directives entitled Federal Personnel Manual (FPM) letters, which instructed federal agencies concerning application of the FLSA to federal employees.

The FPM letter pertinent to this appeal, FPM Letter 551–5 with attachments (Letter), contained detailed instructions for the application of the FLSA to federal employees engaged in fire protection activities. The Letter stated generally that "[t]o the extent that the FLSA would provide a greater *overtime* pay benefit to these employees than the benefit payable under title 5, the employee is entitled to the FLSA benefit."[6] (Emphasis in original.)

A crucial provision made applicable to employees covered by § 207(k) is reflected in Attachment 2 to the Letter:

Only those hours that the employee is actually on duty during the tour of duty shall be included in hours worked under the FLSA. Paid time off during the work period (holiday, annual leave, sick leave, or any excused absence with pay) shall *not* be included as hours worked. (Emphasis in original.)

Under this provision, a federal firefighter regularly scheduled for a tour of duty of 144 hours who takes authorized "leave with pay"[7] is treated as incurring a reduction in FLSA overtime pay. Basic and premium compensation received for the work period remain unaffected because under Title 5 authorized "leave with pay" is included as hours of work. FLSA overtime, on the other hand, is correspondingly reduced by the number of hours of "leave with pay" because only those hours during which the employee is actually on duty are included as hours worked for the purpose of FLSA overtime.[8]

Appellants, disagreeing with OPM's interpretation of the relevant statutes, brought an action for damages (back pay) pursuant to 28 U.S.C. § 1346(a)(2) (1982)[9]

if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

4. In *Zumerling*, 769 F.2d at 747, this court stated that "[o]vertime is mandated ... for all hours over the *108 'average.'*" The district court in the present case found that the average number of hours after which FLSA overtime is due to be 106 hours biweekly. The parties have not asserted error in this finding, which is supported by the Leave and Earning Statements of Chester Lanehart that show overtime earnings for 38 hours. *See* 29 U.S.C. § 207(k)(1)(B) authorizing the Secretary of Labor to find "average number of hours" after which overtime pay is due.

5. When a federal firefighter works more than the regularly scheduled hours, i.e., irregular, unscheduled overtime duty, such employee may be eligible for overtime pay under either 5 U.S.C. § 5545(c)(1) or 29 U.S.C. § 207.

6. 5 U.S.C. § 5545(c)(1).

7. Under 5 U.S.C. § 6303 (annual leave), 5 U.S.C. § 6307 (sick leave), 5 U.S.C. § 6322 (jury duty), or 5 U.S.C. § 6323 (military training).

8. The employee still receives some overtime compensation as long as the number of hours of authorized "leave with pay" is less than thirty-eight hours in the biweekly pay period. Once the authorized absence equals or exceeds thirty-eight hours the employee receives no FLSA overtime compensation.

9. The complaint alleged that each appellant was entitled to less than $10,000 in damages. Jurisdiction in this court is based upon 28 U.S.C. § 1295(a)(2) (1982). *Bray v. United States*, 785 F.2d 989 (Fed.Cir.1986); *Zumerling v. Devine*, 769 F.2d 745 (Fed.Cir.1985).

and for a declaration of their rights pursuant to 28 U.S.C. §§ 2201, 2202 (1982) against the Director of OPM,[10] and the United States of America in the U.S. District Court for the District of Maryland.

### District Court Decision

Both parties filed motions for summary judgment, and the district court, agreeing with the parties that there were no facts in dispute, concluded that only a question of law, i.e., statutory interpretation, needed to be decided to resolve the case and that it was appropriate for disposition by summary judgment.

Initially the court noted that in four separate statutes under Title 5 Congress authorized federal employees to take "leave with pay."[11] *Lanehart*, 615 F.Supp. at 1303. It concluded that there was no manifestation of any congressional intent as to the meaning of "leave with pay" as variously expressed in the leave statutes under consideration. *Id.* at 1305.

The court stated that OPM's interpretation of the statutes at issue gave effect to both enactments (FLSA and Title 5) while resolving a potential conflict between

them.[12] It further noted that OPM's construction of these statutes was entitled to special deference since § 204(f) and the legislative history of the 1974 Amendments indicated that OPM was vested with the authority to administer the FLSA as it related to federal workers and to resolve any conflicts between Title 5 pay entitlements and entitlements under the FLSA.[13]

The court also examined opinions issued by the Comptroller General dealing with the issue of quantum of "pay" entitlement during authorized absences.[14] These opinions were accorded little weight because in the court's view their logic was not persuasive and they were internally inconsistent. The court did not think that the minor differences in wording among the four "leave with pay" statutes should lead to diametrically opposed results with respect to entitlement to overtime pay during authorized absences. *Id.* at 1306–07.

Concluding that an employee may not be compensated for overtime work when the employee does not actually work overtime hours, the court granted the government's motion for summary judgment.

---

**10.** When the suit was initially filed, Donald J. Devine was Director of OPM. Constance Horner is now Director.

**11.** Although "leave with pay" is used generally to refer to the four leave statutes, they have different wording:

Section 6303 provides, in pertinent part, that: (a) An employee is entitled to annual leave *with pay....* (Emphasis added.)

Section 6307 provides, in pertinent part, that: (a) An employee is entitled to sick leave *with pay....* (Emphasis added.)

Section 6322 provides, in pertinent part, that: (a) An employee ... is entitled to leave, *without loss of, or reduction in, pay,* leave to which he otherwise is entitled, ... in connection with a judicial proceeding.... (Emphasis added.)

Section 6323 provides, in pertinent part, that: (a)(1) [A]n employee ... is entitled to leave *without loss in pay* ... for active duty or engaging in field or coast defense training under sections 502–505 of title 32 as a Reserve of the armed forces or member of the National Guard. (Emphasis added.)

**12.** The conflict related to the "hours of work" concept which the district court thought resolved by OPM's decision to compute overtime

pay under whichever statute, Title 5 or FLSA, produced the greater benefit to the employee. *Lanehart*, 615 F.Supp. at 1304–06.

**13.** H.R.Rep. No. 913, 93rd Cong., 2d Sess. at 28, *reprinted in* 1974 U.S.Code Cong. & Admin. News 2811, 2837–38; S.Rep. No. 690, 93rd Cong., 2d Sess. 23 (1974).

**14.** *Matter of Evans*, B–216640 (March 13, 1985); *Matter of Gipson*, B–208831 (April 15, 1983); *Matter of Overtime Compensation for Firefighters*, 62 Comp.Gen. 216 (1983).

In *Evans*, the Comptroller General, relying on earlier opinions in *Louis Pohopek*, 60 Comp. Gen. 493 (1981), and *R. Elizabeth Rew*, 55 Comp.Gen. 1035 (1976), concluded that absences for annual and sick leave do not constitute hours of work for the purpose of FLSA, a conclusion opposite that reached in *Gipson* and *Firefighters* where the Comptroller General determined that firefighters on authorized court or military leave were entitled to the full amount of their regular pay, including FLSA overtime for regularly scheduled work. The different conclusions in these opinions were attributed to the differences in wording among the statutes authorizing absences. *See, supra,* note 11.

## OPINION

■ A. This case presents the question of whether the four "leave with pay" provisions of Title 5 in their purpose and effect entitle appellants to an undiminished amount of pay for a pay period in which authorized leave is taken. More particularly, although authorized leave does not constitute hours worked for purposes of the overtime provision of FLSA, resulting in reduced overtime pay, appellants seek to have the "leave with pay" provisions of Title 5 interpreted in a manner that makes up this loss to the employee for the particular pay period. Appellants admit that they are not entitled to Title 29 overtime pay as such. Thus, appellants contend that they are seeking pay under Title 5 and not under Title 29 and their briefs and arguments are solely directed to the meaning and purpose of the "leave with pay" sections of Title 5.

The appellees, on the other hand, have, in effect, recharacterized appellants' claim as one for additional overtime pay under Title 29. Their brief does not adequately address appellants' arguments, but only considers issues that are consistent with their view of appellants' claim. The brief states that appellants are not entitled to FLSA overtime for periods of non-work and that any claims for retroactive FLSA overtime are barred by 29 U.S.C. § 259. But, as noted, the appellants do not seek, and admit they are not entitled to, additional FLSA overtime pay. The appellees' arguments are, therefore, not particularly helpful in resolving this appeal. However, two specific arguments of the appellees do require consideration.

■ B. Appellees urge that OPM's interpretation and application of the provisions of FLSA and Title 5 are entitled to great deference. While the administration of FLSA resides generally in the Department of Labor, the OPM (and its predecessor, the Civil Service Commission) was specifically authorized by Congress to administer FLSA in the federal sector. 29 U.S.C. § 204(f). The legislative history indicates that this was done so that any conflicts between Title 5 pay entitlements and en-

titlements provided for in the FLSA could be resolved by a single authority. We agree that deference should be given to the interpretative guidance with respect to FLSA issued by OPM following the enactment of the 1974 Amendments. *See Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Baker v. Office of Personnel Management,* 782 F.2d 993 (Fed. Cir.1986). Of particular relevance is FPM Letter 551-5 containing instructions to federal agencies for the computation of overtime pay of firefighters under FLSA and Title 5. As pertinent here, Attachment 2 to the Letter expressly states that paid leave "shall not be included as hours worked" in computing FLSA overtime, but notes in Attachment 3 that such absences with pay are included as hours of work in determining overtime entitlement under Title 5. Neither of these provisions is at issue in this case, and we find nothing in FPM Letter 551-5 that interprets or otherwise deals with the "leave with pay" provisions of Title 5. Accordingly, the deference argument is inapposite.

OPM was also instructed by the Congress to administer the 1974 Amendments in a manner consistent with the Department of Labor's administration of FLSA in the private sector. *See* H.R.Rep. No. 913 at 28, *reprinted in* 1974 U.S.Code Cong. & Admin.News at 2837. The Secretary of Labor's regulations state with respect to leave "pay" that:

> Nothing in this example is intended to imply that the employee has a statutory right to [any particular amount] as vacation pay. This is a matter of private contract between the parties who may agree that vacation pay will be measured by straight-time earnings for any agreed number of hours or days, or by total normal or expected take-home pay for the period or that no vacation pay at all will be paid.

29 C.F.R. § 778.219(a)(1) (1978); *see also* 29 C.F.R. §§ 778.218(a) and (d) (1978). Thus, under Department of Labor regulations the allowances for paid leave are a matter of contract independent of FLSA, and there is nothing to the contrary in OPM's instruc-

tions issued pursuant to the 1974 Amendments.

A second argument by the appellees is that "contemporary legislative history" supports OPM's application of Title 5 and the 1974 Amendments in this case. The meaning of this is apparently that bills have been introduced in Congress nearly every year since 1974 which, if enacted, would, among other things, have corrected the FLSA overtime pay reduction of firefighters that results from taking authorized leave. Appellees contend that when an administrative interpretation of a statute has been called to the legislature's attention, there is reason to regard the failure of the legislature to act as evidence of the correctness of the interpretation, citing *Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), and *CBS, Inc. v. Federal Communications Commission,* 453 U.S. 367, 101 S.Ct. 2813, 69 L.Ed.2d 706 (1981).

We find this argument singularly unpersuasive in the context of this case. In the cited cases, the issue involved "considerable public controversy," *CBS, Inc.,* 453 U.S. at 382, 101 S.Ct. at 2823, or Congress had a "prolonged and acute awareness" of the importance of the issue, *Bob Jones,* 461 U.S. at 601, 103 S.Ct. at 2033. The overtime pay of firefighters did not rise to these levels in Congress. As *Bob Jones* teaches:

> Ordinarily, and quite appropriately, courts are slow to attribute significance to the failure to Congress to act on particular legislation. See, *e.g., Aaron v. SEC,* 446 U.S. 680, 694, n. 11 [100 S.Ct. 1945, 1954 n. 11, 64 L.Ed.2d 611] (1980). We have observed that "unsuccessful attempts at legislation are not the best of guides to legislative intent," *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 382, n. 11 [89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371] (1969).

*Id.* at 600, 103 S.Ct. at 2032. Moreover, it is clear that the real issue in this case—the effect of the "leave with pay" provisions of Title 5—was never before Congress in any of the proposed legislation cited by the appellees.

C. The purpose and effect of the "leave with pay" provisions as applicable to the facts of this case are not clearly discernible from the language of the statutes. The sick and annual leave provisions use the words "leave with pay," §§ 6303, 6307, the military leave provision says "leave without loss in pay," § 6323(a)(1), and the jury duty leave is described as "leave without loss of, or reduction in, pay," § 6322(a). While the words in §§ 6323(a)(1) and 6322(a) are suggestive of an intent to preserve the status quo with respect to the employee's compensation when he is on approved leave, the connotation of the affirmative clause "leave with pay" in §§ 6303 and 6307 is less certain. The word "pay" itself is undefined in the statute and regulations. A dictionary definition, however, would be broad enough to cover all "wages, salaries and other forms of remuneration." See Webster's New Collegiate Dictionary, 835 (G. & C. Merriam Co. 1979); Roget's International Thesaurus, § 839.4 (3d ed. 1970) (pay is synonymous with remuneration, compensation, salary, and wages). Finally, it is unclear whether the "leave with pay" provisions should be limited to Title 5 forms of pay, as the district court determined.

The coverage of jury and military paid leave provisions is partially illuminated by the legislative history. The House and Senate Reports accompanying H.R. 6507, which provided leave for jury duty, contain the following language.

> The purpose of this bill is to provide leave of absence for Federal and District employees for jury service in both State and Federal courts without loss of compensation or leave *otherwise provided by law.*

> Section 1 provides that the compensation of such employees shall not be reduced by reason of jury service in either state or United States courts nor shall leave authorized by law be reduced by reason of such jury service.

> Section 2 provides that such employees shall receive no compensation for jury service in any Unites [sic] States Court.

Section 3 provides that any pay received for jury service in State courts shall be charged or deducted from *the regular pay* of such employees of the United States. [Emphasis supplied.]

H.R.Rep. No. 1959, 76th Cong., 3d Sess.; S.Rep. No. 1866, 76th Cong., 3d Sess. (1940). This history suggests a congressional intention to use "pay" in the statute in an encompassing way—"compensation ... otherwise provided by law" can hardly be stated more broadly. Moreover, this history speaks in terms of the "regular pay" of the employee not being reduced, except that any amount received for jury duty is charged or deducted against it. *See* 5 U.S.C. § 5515 (1982). The report also states that an employee is to receive no pay for jury service in the federal courts other than regular "compensation."

When this statute was amended to provide paid leave for the appearance of an employee as a summoned witness, the Senate Report again recognized that an employee should not suffer loss of "regular pay" and should be "paid his regular salary during the time he is absent as a witness." *See* S.Rep. No. 1371, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News, 5014, 5017.

Equally persuasive and pertinent is the legislative history of Congress' amendment to the military training leave statute in 1968. 5 U.S.C. § 6323. This amendment provided that military compensation received by a reservist or national guardsman while on emergency military leave "shall be credited against the pay payable to that employee or individual with respect to his civilian position for that period," 5 U.S.C. § 5519 (1982). The Senate Report explained this provision by stating: "His salary earned as a guardsman will be deducted from his civilian pay so that, unlike summer training periods, dual compensation will not occur." S.Rep. No. 1443, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. Code Cong. & Admin.News 4288–4289. This suggests that Congress expected that civilian pay would continue unreduced in the absence of a specific provision to the contrary.

Finally, we note that the Comptroller General was requested to opine on the amount to be paid a wage board hourly employee during World War II when he was called to jury duty. At that time the employees were working regular forty-eight hour weeks, consisting of six eight-hour days as a result of wartime general administrative orders, and were regularly paid overtime of time and one-half for eight hours each week pursuant to the provisions of the War Overtime Pay Act of 1943, Pub.L. No. 78–49, 57 Stat. 75 (1943). The Comptroller General's opinion states:

The Act of June 29, 1940, 54 Stat. 689, does not limit an employee's compensation during the jury service to basic compensation, that is, exclusive of overtime compensation. The purpose of the statute is to make Federal employees available for jury service without loss of the total compensation they would have received had they remained on duty in their civilian positions.... *If an employee is required to serve on a jury on the sixth day of the week, unquestionably his compensation would be diminished if he were not paid the overtime rate of compensation he would have received had he remained on duty.* (Emphasis supplied).

23 Comp.Gen. 904, 906–07 (1944). And in another Comptroller General's opinion involving leave for military training, it was stated:

The act of May 12, 1917, *supra,* entitles employees of the Government to leave of absence "without loss of pay" for all days they are ordered to duty with troops, etc., not in excess of 15 days each calendar year. While the absence in one case is charged to "court leave" ... and in the other case to "military leave" ... *the purpose sought to be accomplished under both acts is identical in that it was intended that such employees should receive the same compensation they otherwise would have received but for the fact that they were absent on military or court leave.* (Emphasis supplied).

27 Comp.Gen. 353, 357 (1947).

There is no comparable legislative history regarding the sick and annual leave

provision indicating congressional intent as to the meaning of the words "with pay." Neither is there any regulatory provision under the annual and sick leave statutes which would indicate how much is to be credited to employees on paid annual or sick leave. *See* 5 C.F.R. Part 630 (1978).[15] Accordingly, we look to case law for the meaning of pay in the sick and annual leave statutes.

In two early cases preceding enactment of the annual and sick leave statutes, our predecessor court was required to deal with a sick leave regulation of the Treasury Department and a leave of absence with pay statute applicable to employees of the Public Printer. In *Ware v. United States*, 7 Ct.Cl. 565, 567 (1871), the court held that an attending physician's certificate "shall both excuse the claimant's absence from duty and entitle him to his salary for the period he was detained by sickness...." When an employee is on sick leave and tenders the proper physician's certificate, the court went on to say that the Secretary of the Treasury had no authority "to withhold any portion of his compensation fixed by law."

Twenty years later, in *Harrison v. United States*, 26 Ct.Cl. 259 (1891), the Acts of 1886 and 1888 were at issue. They granted employees of the Public Printer "a leave of absence, with pay." Piece workers were by statute to receive the same as time workers while on paid absence. The question according to the court was "[w]hether this 'pay' shall be the pay which the employee would have received if he had not received a leave-of-absence...." *Id.* at 270. It concluded that the "legislative purpose [was] that wages shall continue, neither diminished nor augmented, just as if no leave-of-absence law had been enacted," *id.* at 272, i.e., as if the employee continued to work during the leave of absence period. While these cases are bearded with some antiquity, their principles have not been overturned. They were also part of the historical perspective when the annual leave and sick leave statute for all federal

workers was first enacted in 1898. H.R. 4751, 55th Cong., 2d Sess., § 7, 30 Stat. 277, 316 (1898).

In another context, the Supreme Court was required to interpret the statutory words "current yearly pay" and "pay proper." *United States v. Mills*, 197 U.S. 223, 25 S.Ct. 434, 49 L.Ed. 732 (1905). The government had refused to apply a percentage pay increase authorized by Congress for military personnel to their longevity pay as it had done for basic pay. The court stated:

> "Current yearly pay" and "pay proper," as used in the sections, mean the regular, ordinary pay which an officer may be entitled to under the facts in his case, and if, by virtue of length of service, he is entitled to receive the compensation provided for in Section 1262, that compensation is his "pay," or his "pay proper," as distinguished from possible other compensation by any allowances, or commutation, or otherwise.

> \*   \*   \*   \*   \*   \*

> The words, "pay proper," we see no reason to think are to be construed differently from the word "pay." The term means compensation, which may properly be described or designated as "pay," as distinguished from allowances, commutations for rations or other methods of compensation, not specifically described as pay.

197 U.S. at 227–28, 25 S.Ct. at 436.

■ Based on the above, we conclude that "pay" as used in the "leave with pay" statutes has consistently been construed for more than a century as encompassing the total compensation or remuneration normally and regularly received by an employee. Buttressing this conclusion is the fact that Congress has used more limited terms, rather than the generic term "pay," when it intended to refer to specific types of pay. For example, §§ 5504, 5542 and 5545 use the phrase "basic pay" and §§ 5542, 5545, 5546 and 5547 speak to "pre-

---

**15.** With regard to military and jury leave, no regulations have been promulgated under those statutes.

mium pay." Moreover, when Congress has intended to exclude certain types of remuneration from a pay statute it has done so with clarity. In 5 U.S.C. § 4109(a)(1), for example, Congress defined the quantum of pay as "all or a part of the pay (except overtime, holiday or night differential pay) of an employee ... selected and assigned for training...."

D. Even though we conclude that "pay" in Title 5 means total compensation or remuneration normally and regularly received, we must also determine whether the "leave with pay" statutes should be construed as covering compensation arising under a different title. All of the interpretations and history that have been discussed predate the 1974 Amendments bringing federal workers under FLSA's overtime pay provisions. From this it could be argued that the "leave with pay" provisions have reference only to compensation under Title 5.

As we have noted, the words without loss of, or without reduction in, pay, as used in §§ 6322 and 6323(a)(1), are strongly suggestive that an employee's pay should not be diminished in any way while he is on jury or military leave. Utilization of phrases such as "compensation ... otherwise provided by law," unreduced "regular pay" and prevention of "dual compensation" in the legislative history of these provisions confirms that Congress was referring to compensation in the broadest sense. Further, when the purpose of the jury/military duty leave provisions is considered, the logic of continuing an employee's regular pay undiminished while on this kind of leave is evident. The employee is in effect permitted to be at a public service duty location, which Congress has determined is not only desirable but should be encouraged by assuring the employee that he will not suffer any pay detriment. We see no basis for holding that a reduction should be allowed in an employee's normal and regular compensation when he is performing a permitted public service at another location.[16]

This does not create a conflict with FLSA provisions. As admitted by appellants, FLSA overtime is reduced, but such reduction is recouped by the employee under the "leave with pay" provisions, if they are interpreted as requiring that he shall not suffer a loss or reduction in pay. The compatibility of this approach with the FLSA requirements is demonstrated by the Secretary of Labor's regulations, 29 C.F.R. § 778.219(a)(1) (1978), that the quantum of pay for leave is a "matter of private contract between the parties." The contract between the government and its employees taking jury or military duty leave is that they will not sustain a loss or reduction in their regular compensation.

The district court determined that the differences in the wording of the "leave with pay" statutes should not be a distinguishing factor, and appellants suggest that the four statutes should be given a parallel interpretation. Appellees have indicated no disagreement with this position of the district court and appellants. We find nothing in the legislative history or cases to indicate that the sick and annual "leave with pay" provisions should be construed more narrowly than the military/jury leave "without loss of, or reduction in, pay" provisions. To be sure, the opinions of the Comptroller General do make this distinction, *see, supra,* note 14, but they do not set forth any persuasive rationale for so doing. *Lanehart,* 615 F.Supp. at 1306–07. Moreover, we must give weight to the longstanding interpretations of the sick and annual leave provisions by our predecessor court, which compel a conclusion that the scope of these provisions does not differ from that of the jury/military leave statutes. *Ware,* 7 Ct.Cl. at 567, ("compensation fixed by law"); *Harrison,* 126 Ct.Cl. at 272 ("wages shall continue, neither diminished nor augmented"); *see also, Taylor v. United States,* 39 Ct.Cl. 43, 55 (1903) ("same rate of pay for days when on leave").

---

**16.** *See* Comptroller General opinions in *Matter of Gipson* and *Matter of Overtime Compensation* *for Firefighters, supra,* note 14.

Accordingly, we hold that the "leave with pay" statutes in their purpose and effect prevent any reduction in the customary and regular pay of the appellants, including overtime pay under Title 29 to which they would be entitled,[17] when appellants are on authorized leave under sections 6303, 6307, 6322 and 6323. The summary judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

17. We do not consider overtime pay under Title 29 for overtime work that is not on a regularly recurring basis and within the normal scheduled work period to be part of customary and regular pay for this purpose. Thus, Title 29 overtime pay for irregularly or intermittently performed overtime whether administratively scheduled or unscheduled would not be covered.