**JONAL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 477–87 C.

United States Claims Court.

Feb. 29, 1988.

John F. Myers, Bethesda, Md., Atty. of Record, for plaintiff. Thomas J. Spain, and Beckett, Cromwell & Myers, P.A., of counsel.

Eric L. Miller, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

WIESE, Judge.

I

In 1979, the Department of Transportation, Federal Aviation Administration ("FAA"), awarded plaintiff a contract for the construction of an emergency equipment station at the Washington National Airport, Washington, D.C. In 1986, operating control over the Washington Airport was transferred from the Federal Government to an independent regional authority. The question that is presented here by defendant's motion to dismiss is whether the FAA—and hence the United States—remains liable for contract claims which plaintiff had pending before the contracting officer at the time of transfer of operating authority. After consideration of the parties' written and oral arguments, the court concludes that the United States is the proper party defendant in this action.

II

In 1986, Congress enacted the Metropolitan Washington Airports Act, Pub.L. No. 99–500, Tit. VI, 100 Stat. 1783–373; Pub.L.

No. 99–591, Tit. VI, 100 Stat. 3341–376; 49 U.S.C.A. §§ 2451–2461 (West Supp.1987), transferring the operating responsibility for the Washington National and Washington Dulles Airports to an independent "Airports Authority"—a public body created by the Commonwealth of Virginia and the District of Columbia. Under the Act, transfer of the airport facilities was to be accomplished by a long-term lease executed between the Secretary of Transportation and the Airports Authority. With respect to this lease, the Act mandated the inclusion of certain terms, including a provision pertaining to the transfer between the parties of existing rights, liabilities and obligations. The jurisdictional dispute in this case concerns the proper interpretation of this statutorily-specified lease requirement.

The section in question, 49 U.S.C. § 2454(c)(6), captioned "Transfer of rights, liabilities and obligations," contains two relevant subparagraphs. The first, subparagraph (A), sets out the scope of the transfer; the second, subparagraph (B), names the exceptions to the transfer. These subparagraphs read in pertinent part as follows:

(A) In General.—Except as specified in subparagraph (B) of this paragraph, the Airports Authority shall assume all rights, liabilities, and obligations (tangible and incorporeal, present and executory) of the Metropolitan Washington Airports on the date the lease takes effect, including leases, permits, licenses, contracts, agreements, claims, tariffs, accounts receivable, accounts payable, and litigation relating to such rights and obligations, regardless whether judgment has been entered, damages awarded, or appeal taken....

(B) Exceptions.—The procedure for disputes resolution contained in any contract entered into on behalf of the United States before the date the lease takes effect shall continue to govern the performance of the contract unless otherwise agreed to by the parties to the contract. Claims for monetary damages founded in tort, by or against the United States as the owner and operator of the Metropolitan Washington Airports, aris-

ing before the date the lease takes effect shall be adjudicated as if the lease had not been entered into.

Plaintiff's contract with the FAA was entered into before the effective date of the airports' lease; hence, under the above-quoted language of subparagraph (B), "the procedure for disputes resolution contained in [the] contract ... shall continue to govern the performance of the contract." The question is: what does this language mean?

We state first the government's position. The government focuses on the fact that subparagraph (B) specifically exempts from transfer to the Airports Authority "claims for monetary damages founded in tort" but contains no corresponding exemption for claims for monetary damages founded in contract. Instead, as to contracts, the exemption identified in subparagraph (B) is the language now in question: "procedure for disputes resolution." Defendant considers this contrast significant.

Indeed, it is this reference to contract procedures rather than to contract claims that leads defendant to argue that the disputed language is only intended to retain the framework of the contract disputes procedures but not the potential liabilities that might result from any decisions entered pursuant to those procedures. As defendant further explains, this preserves for the contractor the right to present a claim to the FAA's contracting officer. If not resolved at the contracting officer level, however, the contractor's claim would then have to be brought against the Airport Authority and not the United States.

Plaintiff reads the language differently. To the contractor, the language of subparagraph (B) means not only that the mechanics for dispute resolution shall remain in place but also the statutory responsibilities which accompany the use of those mechanics, namely, the government's obligation, as defined by the Contract Disputes Act, 41 U.S.C. § 612 (1982), to promptly satisfy any judgment or monetary award entered against it as a result of the dispute resolution procedures. The contractor makes the

point that it is meaningless to talk about a contract disputes resolution procedure that engages parties not bound to its results.

The court agrees with the contractor's position. Although the language of subparagraph (B) could perhaps have been more precise, still it seems clear enough that Congress intended to do more than preserve a naked procedural device. The critical point the government misses is that subparagraph (B) sets out exceptions to a transfer of existing "rights, liabilities and obligations"; for that exception language to make any sense, subparagraph (B) must be given a substantive content—it must be viewed as preserving a procedure that yields *enforceable* liability determinations on contract claims.

To read the language as the Government does is to leave the contractor in the anomalous position of pursuing a claim before a contracting officer whose agency has no financial stake in the matter and who has, therefore, no authority to enforce any decision he might make. Such a scheme makes no sense. On the other hand, by attaching substantive meaning to the exceptions clause relating to contractual obligations, a symmetry is achieved between contract claims and tort claims. Monetary claims sounding in both contract and tort that arose prior to the transfer of control remain litigable against the United States. Such a scheme makes sense because it leaves the United States as the responsible party for matters that had their origin under its exclusive supervision. This, then, is the view the court should adopt for "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982).

Based on this reasoning and in the absence of any legislative history to the contrary,[1] we take the phrase "procedure for disputes resolution" to mean all contract dispute procedures and related obligations enumerated in the parties' contract and the Contract Disputes Act. Accordingly, the

government remains a contractually-obligated party under plaintiff's contract and thus is the proper defendant in this forum.

### III

For the reasons stated, defendant's motion to dismiss is denied.

---

1. The parties have not cited to the court any legislative history and the court's own research on the point has uncovered no material that would be helpful in deciding the issue.