George C. ARMITAGE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 139–89C, 568–89C, 632–89C, 690–89C and 90–53C.

United States Claims Court.

May 28, 1992.

Ira M. Lechner, Washington, D.C., for plaintiffs. Michael B. Waitzkin, and Rima Sirota of counsel.

Agnes M. Brown, with whom were Asst. Atty. Gen. Stuart M. Gerson, and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case is before the court on the parties' cross-motions for partial summary judgment. This opinion deals with the twenty plaintiffs remaining in this action, all of whom were employed as police officers by the Federal Aviation Administration ("FAA") at National and Dulles Airports prior to the termination of the FAA's responsibility for those airports and their transfer to the Metropolitan Washington Airports Authority ("MWAA"). These plaintiffs allege that they were entitled to premium pay for regularly-scheduled Sun-

day and holiday hours during authorized absences from work under the "leave with pay" provisions of the Federal Employees Pay Act ("Title 5").[1] *See* 5 U.S.C. §§ 6303, 6307, 6322, 6323 (1988). The issue presented is whether these plaintiffs have any claim for back pay against the United States for that period of their employment prior to the creation of the MWAA. For the following reasons, the court concludes that liability for claims arising during that period, if any, was assumed by the new authority, and that the plaintiffs do not have a claim for back pay against the United States.

## DISCUSSION

Defendant contends that the claims of these plaintiffs as against the United States were extinguished by passage of the Metropolitan Washington Airports Act of 1986 ("Act"), 49 U.S.C. App. §§ 2451–2456 (1988). The Act transferred the responsibility for operating the Washington National and Washington Dulles Airports to the MWAA, a public body created by the Commonwealth of Virginia and the District of Columbia. Pursuant to the Act, transfer of the airport facilities was to be accomplished by a long-term lease executed between the Secretary of Transportation and the MWAA. With respect to this lease, the Act mandated the inclusion of certain terms, including the following provision:

(6) Transfer of rights, liabilities, and obligations

(A) In general

[T]he Airports Authority shall assume all rights, liabilities, and obligations (tangible and incorporeal, present and executory) of the Metropolitan Washington Airports on the date the lease takes effect, including leases, permits, licenses, contracts, agreements, claims, tariffs, accounts receivable, accounts payable, and litigation relating to such rights and obligations, regardless whether judgment has been entered, damages awarded or appeal taken.

1. Pub.L. No. 89–554, 80 Stat. 490 (codified as amended in scattered sections of 5 U.S.C.).

49 U.S.C. App. § 2454(c)(6)(A). The Act also provides the following exceptions:

(B) Exceptions

The procedure for disputes resolution contained in any contract entered into on behalf of the United States before the date the lease takes effect shall continue to govern the performance of the contract unless otherwise agreed to by the parties to the contract. Claims for monetary damages founded in tort, by or against the United States as the owner and operator of the Metropolitan Washington Airports, arising before the date the lease takes effect shall be adjudicated as if the lease had not been entered into.

49 U.S.C. App. § 2454(c)(6)(B).[2] Plaintiffs find in this language an exception for contract claims.[3] For reasons explained below, the court concludes that, assuming the existence of a contract exception, it does not apply here.

Plaintiffs contend that the Government's liability is not discharged by the Act. They recognize that the FAA, which operated the airports through an entity called the Metropolitan Washington Airports, transferred its rights, liabilities, and obligations in the airports to the MWAA. However, they argue that the pay claims of former FAA employees were the obligation of the United States, and not the Metropolitan Washington Airports. They point out that the airport plaintiffs were employed and paid by the FAA not the Metropolitan Washington Airports. That distinction does not have the import suggested by plaintiffs. As the Act itself points out, the Metropolitan Washington Airports is "an organization within the Federal Aviation Administration." 49 U.S.C. App. § 2453(3). That same section defines employees within the Act as "all permanent Federal Aviation Administration personnel employed ... by the Metropolitan Washington Air-

ports." *Id.* It is apparent, therefore, that the Act treats the employing entity as the FAA, acting through the Metropolitan Washington Airports. Under whatever guise responsibility existed prior to the transfer, Congress plainly expected to move that responsibility, with limited exceptions, to the MWAA.

The liabilities transferred by the Airports Act clearly include the claims of the airport police. The language of the transfer of liability is broad. Section 2454(c)(6)(A) provides that "all ... liabilities ... including ... claims ... and litigation relating to such rights and obligations" shall be assumed by the MWAA. Moreover, Congress was plainly aware of the impact of the Act on the airport employees. *See* 49 U.S.C. App. § 2451(6). Section 2457 provides that the Secretary of Transportation shall ensure that the MWAA has established arrangements to protect the interests of the employees. Among other provisions, section 2457 requires that the MWAA adopt labor agreements (§ 2457(a)(1)), transfer and retain all employees who agree to transfer (§ 2457(a)(2)), and credit employees for annual and sick leave accrued during the period of federal employment (§ 2457(a)(4)). Virtually everything pertaining to the interests and benefits of the employees was transferred to the MWAA. *But cf.* §§ 2454(c)(6)(C) (FAA remains responsible for reimbursing Employees' Compensation Fund), 2457(d) (employees not entitled to lump sum payment for unused annual leave). The court sees no principled reason to create an exception for the employees' pay claims.

■ Plaintiffs also urge that their pay claims fall within the statutory exception for claims sounding in contract. They contend that the proper quantum of pay for periods of authorized absence is, in effect,

---

**2.** Subparagraph (C) further excepts from the transfer payments into the Employees' Compensation Fund. Plaintiffs do not rely on this exception.

**3.** *See Jonal Corp. v. United States,* 14 Cl.Ct. 337 (1988). In *Jonal,* Judge Wiese noted that the literal language of subsection (B) does not ap-

pear to create an exception for contract claims. He found, nevertheless, that in fact that was Congress' intent. *Id.* at 339. For the purpose of ruling on the motions for partial summary judgment, the court assumes the correctness of plaintiffs' position.

a matter of contract between the Government and its employees. Plaintiffs' only support for this contention is the Federal Circuit decision in *Lanehart v. Horner*, 818 F.2d 1574, 1582 (Fed.Cir.1987).

█ The court in *Lanehart* held that the words "without loss of," or "without reduction in pay," as used in Title 5 mandate that employees' pay should not be diminished while they are on jury or military leave. *Id.* at 1582 (referring to 5 U.S.C. §§ 6322, 6323). In its discussion, the court suggests that the compatibility of this interpretation with FLSA requirements is demonstrated by the Secretary of Labor's regulations at 29 C.F.R. § 778.219(a)(1) (1978), which state that the quantum of pay for leave is a "matter of private contract between the parties." The *Lanehart* court states that the "contract between the government and its employees taking jury or military duty leave is that they will not sustain a loss or reduction in their regular compensation." 818 F.2d at 1582. The Secretary of Labor's regulations, of course, are directed at private sector labor contracts. The court's comments were more by way of analogy and not based on an inquiry into the legal relationship between the Government and its employees, and were thus *obiter dictum*. It is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from a contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir.1985); *Shaw v. United States*, 226 Ct. Cl. 240, 251, 640 F.2d 1254, 1260 (1981); *Urbina v. United States*, 192 Ct.Cl. 875, 881, 428 F.2d 1280, 1284 (1970). Plaintiffs' pay claims do not fall within a contract exception to the transfer of liability.

After initial briefing of the motions, the parties called the court's attention to two cases involving the MWAA. Neither affects the outcome here. In *Metropolitan*

*Airports Authority v. Citizens for the Abatement of Aircraft Noise*, —— U.S. ——, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991), the Supreme Court held that, because the Congressional "Board of Review" created by the Act had veto power over decisions made by the MWAA, the Act violated the doctrine of separation of powers. This is a significant case, but it has no effect on the plaintiffs in the instant action. The invalidation of the Board of Review did not affect the existence of the MWAA or the transfer of the FAA's authority to the MWAA.

In *Coe v. Burnley*, No. 86–2536, 1988 WL 288971 (D.D.C. Sept. 30, 1988) (order memorializing settlement agreement and dismissing case with prejudice), the plaintiff was, like the plaintiffs here, a federal employee at the two airports. In 1986, he filed a claim against the FAA pursuant to the Age Discrimination in Employment Act ("ADEA"). He continued to work at the airports after they were transferred to the MWAA in 1987. Despite the transfer, the FAA settled and paid his claim. The plaintiffs in this action point to *Coe* as evidence that the FAA intended to retain liability for pay claims that arose prior to the creation of the MWAA.

The court has virtually nothing from the *Coe* record before it. In any event, Federal Rule of Evidence 408 excludes evidence of settlements or offers to compromise when offered to establish liability.[4] *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir.1987); *Gregory Lumber Co. v. United States*, 11 Cl.Ct. 489, 506 (1986).

█ Moreover, even assuming the result in *Coe* could be used as some evidence of the FAA's construction of the statute, the court notes that Mr. Coe's claim arose under the ADEA and is a "pay claim" only in the sense that the remedy provided by the ADEA is wages lost due to discrimination. Claims under the ADEA are more in the nature of tort actions,[5] which are ex-

---

4. Rule 408 provides, in pertinent part, as follows: "Evidence of furnishing ... a valuable consideration in compromising ... a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount."

5. Claims under the ADEA are analyzed under the same principles as claims under Title VII. *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.1991); *Whitten v. Farmland Industries, Inc.*, 759 F.Supp. 1522 (D.Kan.1991). Claims against public employers under Title VII that involve

cepted from the transfer of liability. *See* 49 U.S.C. App. § 2454(c)(6)(B).

## CONCLUSION

The court grants defendant's motion for partial summary judgment as to the airport plaintiffs and denies plaintiffs' motion. The Clerk is directed to enter final judgment dismissing the claims of all remaining plaintiffs.

*Tire & Rubber Co.,* 611 F.2d 1363 (3rd Cir.1979) (recognizing the tort of wrongful discharge under Pennsylvania law); *Fellows v. Medford Corp.,* 431 F.Supp. 199 (D.Or.1977) (allowing an ADEA claim to proceed with a pendent claim for the tort of employee discharge based on a "socially undesirable" motive); *Madani v. Kendall Ford Inc.,* 312 Or. 198, 818 P.2d 930, 932 (1991) (recognizing the tort of wrongful discharge under Oregon law).

alleged Constitutional violations may also be brought under 42 U.S.C. § 1983 (1981). *See Lowe v. Monrovia,* 775 F.2d 998 (9th Cir.1985). Section 1983 is to "... be read against the background of tort liability ..." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). *See also Perks v. Firestone*